## HENRY WINTER

*v.*

## NAPOLEON B. THISTLEWOOD.

*Filed at Mt. Vernon January 18, 1882.*

CONTESTED ELECTION—*of mayor of city—county court has jurisdiction.*
The county court has jurisdiction to hear and determine contested elections
of mayors of cities organized under the general law relating to cities and
villages.    The common council has no such jurisdiction, possessing no judicial powers.

APPEAL from the County Court of Alexander county; the
Hon. REUBEN S. YOCUM, Judge, presiding.

Messrs. MULKEY & LEEK, for the appellant.

Messrs. GREEN & GILBERT, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a proceeding, commenced by a statement in writing, in the form of a bill in chancery, filed in the county court
of Alexander county, to contest an election to the office of
mayor of the city of Cairo.    That court sustained a demurrer
to the petition on the ground of a want of jurisdiction, and
that ruling presents the only question upon which we are
required to pass.

The petition alleges that the city of Cairo is incorporated
under the general law in relation to the incorporation of cities
and villages, and this is, of course, admitted by the demurrer.
The 49th section (sec. 2, art. 4,) of that law enacts, that
"at the general election held in 1877, and biennially thereafter, a mayor, a city clerk, a city attorney, and a city treasurer shall be elected in each city."    *    *    *    And the 57th
section (sec. 10, art. 4) enacts, that "the manner of conducting and voting at elections to be held under this act, and
contesting the same, the keeping of poll lists and canvassing

the votes, shall be the same, as nearly as may be, as in the case of the election of county officers under the general laws of this State."   *   *   *   What, then, is the mode provided by general law for contesting elections of county officers?

By section 97, chap. 46, Rev. Stat. 1874, entitled "Elections," the circuit court is empowered "to hear and determine contests of the election of the judges of the county courts of their counties, and in regard to the removal of county seats, and in regard to any other subject which may by law be submitted to the vote of the people of the county." And by section 98 of the same chapter, "the county court shall hear and determine contests of election of all other county, township and precinct officers, and all other officers for the contesting of whose election no provision is made." And section 113 of the same chapter provides, that "the person desiring to contest such election shall, within thirty days after the person whose election is contested is declared elected, file with the clerk of the proper court a statement, in writing, setting forth the points on which he will contest the election, which statement shall be verified by affidavit in the same manner as bills in chancery may be verified."

It would, therefore, seem beyond controversy,—First, that the election of mayor of the city of Cairo was held under the general law relating to the incorporation of cities, villages, etc.; second, that being so held, the manner of "contesting the same" "shall be the same, as nearly as may be, as in the case of the election of county officers under the general laws of this State;" third, that since the only county office to be contested in the circuit court is that of county judge, and the county court "shall hear and determine contests of election of all other county officers," etc., the contest is properly made in the county court; and fourth, that the statement in writing was sufficient to give that court jurisdiction, unless some provision can be found in the statute showing, clearly, a contrary intention.

Such a provision, it is contended, is found in section 6, art. 3, of the general law providing for the incorporation of cities, villages, etc., which declares that "the city council shall be judge of the election and qualification of its own members." The argument is, section 1 of that article provides that the city council shall consist of the mayor and aldermen, and the right to judge of the election and qualification of its own members is not restricted, but is general, and includes all,—the mayor as well as the aldermen. Suppose this be conceded, to what extent will it affect the present question?

The right conferred upon the council is only to judge of the election and qualification of its own members,—simply to determine who shall be a part of it and participate in its deliberations. No judicial powers are conferred upon it, and when it has denied one, claiming to be a member, the privilege of participating in its proceedings, it has done all that there is the slightest pretence it has any authority for doing.

But the mayor is the chief executive officer of the city, and, independently of the council, in that capacity may exercise, within the city limits, the powers conferred upon sheriffs to suppress disorder and keep the peace. (Section 8, art. 2.) He may release any person imprisoned for a violation of any city ordinance. (Section 9, art. 2.) He shall take care that the laws and ordinances are faithfully executed. (Section 10, art. 2.) He shall have power, at all times, to examine and inspect the books, records and papers of an agent, employé or officer of the city. (Section 11, art. 2.) He shall annually, and from time to time, give the council information relative to the affairs of the city, etc. (Section 12, art. 2.) He shall have power, when necessary, to call on every male inhabitant of the city over the age of eighteen years to aid in enforcing the laws and ordinances, and to call out the militia to aid in suppressing riots, etc. (Section 13, art. 2.) The mayor, or any three aldermen, may call

special meetings of the city council. (Section 17, art. 3.)
And he may exercise a veto power in regard to ordinances.
(Section 18, art. 3.)   In none of these respects does the city
council have any control over him, and in all of them he
acts entirely independently of the common council, and
without the slightest reference to the question of his mem-
bership in that board.   Indeed, except in case of a tie in the
votes of the aldermen, when he is required to give the cast-
ing vote, his duties as a member of the council are more
formal than substantial, being limited to merely presiding.
It is to be borne in mind authority is not conferred upon the
common council to be the judge of the election and qualifi-
cation of the mayor, as it is to be presumed would have been
if such had been intended, but simply of its own members.

We are clearly of opinion whatever power the common
council may exercise in regard to the election and qualifica-
tion of a mayor, as affecting his membership of the council,
it has no power to go beyond the letter of the statute and
determine a contest between two rival candidates for the
office of mayor.   Even if it be conceded, which we do not,
that the council may lawfully decline to allow the mayor to
preside over its deliberations, and give the casting vote in
case of a tie, on the ground that he is not elected and quali-
fied, its power extends no further.   In such case the power
is given to the body to enable it to protect and purify itself,
but neither principle nor analogy extends it any further.

Incidentally, we have heretofore recognized authority in
the county court to hear and determine contests of this char-
acter.   *Brush* v. *Lemma,* 77 Ill. 496 ; *Young* v. *Adam,* 74 id.
480 ; *Linegar* v. *Rittenhouse,* 94 id. 208.   In the last named
case we held that the council was the sole tribunal for deter-
mining a contest for the office of alderman, solely because
such we construed to be the reading of the statute.   But the
duties of that office are purely legislative.   The alderman
can act only as an integral part of the council.   And it was

there said, that under the 57th section (section 10, art. 4,) of the general law for the incorporation of cities and villages the county court has jurisdiction to hear and determine cases of contested elections for the office of mayor.

The decree of the county court is reversed, and the cause remanded, with directions to that court to overrule the demurrer, and allow answer to be filed.

*Decree reversed.*