## HEHL v. GUION, Appellant.

### Division One, March 14, 1900.

1. **Elections: REJECTED BALLOTS: PRESUMPTION.** A ballot rejected by the judges of election and so returned by them, should not be counted in a contest in court until there is some evidence beside the ballot itself to show that it is a lawful ballot. The action of the election judges in receiving and rejecting ballots is presumed to be right until the contrary is shown by evidence.

2. ———: **INITIALS ON BALLOT: OBJECT.** The object of the statute requiring the initials or names of the election judges to be written on the back of the ballots in ink or indelible pencil, is to guard against frauds while an election is in progress.

3. ———: **DEPOSITING AND COUNTING BALLOTS WITHOUT INITIALS: INDELIBLE PENCIL.** The law does not say that ballots on which two election judges have not written their names or initials in ink or indelible pencil shall not be counted. It only says that they shall not go into the ballot box. The rejection, therefore, of a genuine ballot on which the judges' initials do not appear, or on which the initials of only one judge appears, or on which the judges' initials are written with erasable pencil instead of ink or indelible pencil, is error.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

REVERSED AND JUDGMENT ENTERED FOR CONTESTEE.

*Jesse A. McDonald* and *Charles J. Fox* for appellant.

(1) It is a familiar rule in election contest cases that when ballots have been rejected by the judges of election, the burden is on the party who claims an illegal rejection, to prove such illegality. In the absence of evidence beyond the ballots, the presumption that they were properly rejected becomes conclusive. Therefore, the nine ballots marked "rejected ballots," were improperly counted for respondent.

Zeiler v. Chapman, 54 Mo. 502; McCrary on Elections (4 Ed.), sec. 459. (2) Ballots not bearing the initials or names of two judges of election, and those imperfectly initialed, in the absence of fraud connected therewith should be counted. McCrary on Elections (4 Ed.), sec. 724; Hackney's case, 31 L. T. N. S. 72; Grant v. McCallum, 12 Can. L. J. 13; White v. McKenzie, 20 Can. L. J. 22; Langford v. Gebhardt, 130 Mo. 630. (a) The failure of the election officers to place their initials on ballots, as the statute provides they should do, does not invalidate the ballots. The qualified elector can not be held responsible for the failure of the judges of election to perform their duty in initialing his ballot. (b) Such an interpretation of the statute would make it violative of the State Constitution. Constitution, art. 2, sec. 9 and art 8.

*W. E. Fisse* for respondent.

The statute (section 4785, R. S. 1889) is mandatory only in so far as it requires the names or initials of two judges of election to be indorsed on the ballots. Its provision that this indorsement shall be written with an indelible pencil or in ink is merely directory. Bowers v. Smith, 111 Mo. 45; Parvin v. Winberg, 130 Ind. 561; Snodgrass v. Wetzell Co. Court, 44 W. Va. 56; State v. Gray, 59 Minn. 6; Jenkins v. Brecken, 7 Can. Sup. Court, Rep. 247; Monk's case, 12 Can. L. J. N. S. 113; State ex rel. v. Russell, 34 Neb. 116; Spurgeon v. Thompson, 37 Neb. 39; McLaran v. Milne Holme, 44 L. T. Rep. 289; Horning v. Burgess, 67 N. W. Rep. 446; Hanscom v. State, 10 Tex. Civ. App. 638; Miller v. Schallern, 79 N. W. Rep. 865.

VALLIANT, J.—This is an election contest for the office of constable in one of the St. Louis districts, growing out of the general election held November 8, 1898. By the official returns the contestee was shown to have received 4,499 votes

and the contestant 4,460, showing a majority of 39 for the contestee, who was accordingly awarded the certificate of election, whereupon in due season he qualified and entered upon the office and continued in the same until he was ousted by the judgment of the circuit court in this case, since which period contestant has been and is in possession.

Upon the trial the circuit court found that contestant had received 4,375 votes and contestee 4,367, showing a majority of 8 for contestant in whose favor judgment was rendered, from which, after due procedure, the contestee had prosecuted this appeal.

I. Along with the regular returns from the various precincts there were ballots which had been rejected by the judges, and were placed in separate sealed envelopes indorsed, "rejected ballots," and signed by the judges.

Upon the trial the court treated these rejected ballots precisely as it did those that the judges of election had approved and counted, that is it judged them by their face and back without any further inquiry, and by that test found that nine of them were in due form and counted them for contestant. That was error. A ballot rejected by the judges of election and so returned should not be counted in a contest until there is some evidence to show that it is a lawful ballot, some evidence besides that shown by the ballot itself.

It is argued for contestant that no reason exists for discriminating between ballots received by the judges and those rejected and since the former are conceded to be subject to condemnation for defects appearing on their face the latter should also be judged by their face. But there is a very great difference. A ballot may be fair on its face and yet illegal because offered by one not entitled to vote, which fact the judges of election may be presumed to know because it is their duty to find out, but of which it is not their duty to make a record and return it with the rejected ballot. Whereas if a ballot has been received and counted but shows

on its face that it is illegal it condemns itself. So too a ballot that has been received and counted by the judges may be fair on its face yet illegal because cast by one not entitled to vote, yet that fact can be made to appear only by proof in the trial of the contest; until it is so proven, the action of the judges is presumed to have been right. In like manner is the action of the judges in rejecting a ballot; the presumption is the same in both cases, and the way to overcome the presumption is the same, that is by proof.

The learned counsel for contestant construe sections 50 and 54 of the Act of 1895 (Ex. Sess., Laws 1895, pp. 29-31) to mean that no ballots are to be returned in the envelopes marked "rejected ballots" except in the cases specified in section 50, viz. (quoting from the brief of the counsel): "First that the particular ballot is found folded within another ballot, in which case the ballot within the other is cast out; and, second, that the ballot is without number." But that is too narrow a construction. Suppose a man presents himself at the polls, gives his name and residence number which upon reference to the registration lists are found, a ballot is handed him which he prepares in due form and hands to the judge to be deposited in the box, at the same time the judge having charge of the registry, as required in section 45 of the act, marks "voted" opposite the name, and just then the would-be voter is challenged, and upon investigation by the judges is found to be an imposter, and his right to vote denied, what are they to do with that ballot? They have no right to destroy it because their action in that respect is not final, it may be reviewed in a contest of the election. Or let us suppose in the same case no challenge is made and the ballot is put in the box and the man goes away. then comes another man who gives the same name and demands to vote, but is told that the record shows he has already voted, that is, that some one has voted in his name and on his registration. Then he brings satisfactory proof

that he is the person represented by the registration, and the judges discover that the other man was an imposter, are they bound to count that fraudulent vote? It is easily susceptible of identification by its numbers. And what are the judges to do with the demand of the legal elector who is there demanding his right to vote? Judges of elections would be worse than mere dummies if they had no power to right such a wrong. In that case it would be their bounden duty to afford the honest elector the right to vote and to reject at the count the fraudulent vote. In such case no record is kept of their proceeding, and the only document to show for their action would be the rejected ballot placed in the envelope sealed and returned as the statute requires. Instances of that kind are not infrequent.

Let us suppose another case: An elector of unquestioned right presents himself at the polls, a ballot is handed him, he retires to the booth, prepares it in due form and hands it to the judge to be placed in the box, then the judge, who is a careful reader of the law and a strict constructionist, for the first time discovers that the initials of the judges are written with an erasable pencil and refuses to put it in the box, whereupon a consultation of the judges is held and it is decided to reject the ballot and give the elector another one in strict form, which is done, and he duly prepares it and it is put in the box, while the rejected one goes into the envelope marked "rejected ballots," what will the court in a contest without any evidence of the facts do with that ballot? That is not an improbable case by any means when we consider the complexity of the Australian election law, and the fact that it is left to be construed by men for the most part unlearned in the technicalities of the law. And indeed when we read the forceful arguments presented in the briefs of the learned counsel on both sides in this case on the question of the effect to be given to the initialing of the ballots, we will not be

surprised if judges learned in the law should decide either way on the case last supposed.

These cases serve to illustrate some of the questions which judges of election in a faithful, intelligent and honest effort to perform their duties are required to decide, and they also illustrate the legal necessity of leaving their decisions in force until the party who challenges them shows by evidence that they were wrong.

The contestant is not entitled to those nine ballots taken from the envelopes of "rejected ballots."

II.   The court rejected 17 ballots that had been counted by the judges of election for contestant and 39 that had been so counted for contestee, because they did not have the initials of the judges indorsed on them precisely in the manner the statute prescribes; three of these had no initials, and the others had the initials of but one judge.

There were ballots also contested that had the initials of the judges, but not written in ink or indelible pencil; these the trial court adjudged to be valid and counted them, 119 being for contestant and 88 for contestee.

The language of our statute is:   "Before delivering any ballot to the elector, the two judges of election having charge of the ballots shall write their names or initials upon the back of the ballot with ink or indelible pencil, and no other writing shall be on the back of the ballot, except the number of the ballot."   [Sec. 4780, R. S. 1889 as amended Laws 1891, p. 133; and section 4785.]   "No judge of election shall deposit any ballot upon which the names or initials of the judges, as hereinbefore provided for, does not appear."

The ruling of the trial court was that the statute was mandatory to the extent of requiring the initials of the judges to be written on the ballot, but directory as to the writing material, and that is the construction contended for by contestant.   The position of the contestee is that the statute is

directory merely as to both requirements, but if mandatory as to one, he contends it is mandatory as to both, and so far as the result of his case is concerned he will be satisfied with either view, because if they are all counted he will have a majority and if they are all thrown out he will likewise have a majority.

We can not get rid of this provision of the statute by merely giving it a name, or classifying it, as mandatory or directory. If to say that it is mandatory means that unless its terms have been literally complied with the elector is to be deprived of his franchise and the candidate of · a vote otherwise lawful, then it is not mandatory, and if to say that it is directory means that it may with impunity be disregarded by the election officers, then it is not directory. Terminology and classification are sometimes helpful in construing a statute, but not always decisive. It is more important to keep in view the purpose of the particular provision in hand, and the consequence, if any, specified to ensue on a failure to do what is directed.

In West v. Ross, 53 Mo. 350, the court was dealing with a statute in these words: "And it shall be the duty of the judges to cause to be placed on each ballot the number corresponding with the number of the voter offering the same; and no ballot not numbered shall be counted." [W. S. 1872, p. 566.] There the direction was plain and the consequence of its disregard specified. The court held that the ballots in that case coming within that category should not be counted. To the same effect and by force of the same statute is the decision in Ledbetter v. Hall, 62 Mo. 422.

In Bowers v. Smith, 111 Mo. loc. cit. 61, the question was as to the validity of the ballot on which the county clerk had erroneously added the name of a candidate not in conformity to the requirements of sections 4772, 4773, R. S. 1889; it was held by a divided court that the ballot was not thereby rendered absolutely invalid. In that case it was said

by BARCLAY, J., delivering the opinion of the court: "If the law itself declares a specified irregularity to be fatal, the courts will follow that command irrespective of their views of the importance of the requirement. . . . . . . In the absence of such declaration, the judiciary endeavor as best they may to discern whether the deviation from the prescribed forms of law had or had not so vital an influence on the proceedings as probably prevented a free and full expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise it is considered immaterial."

In Hall v. Schoenecke, 128 Mo. 661, some of the ballots contested had not been prepared by the voters in the booths as the law required, but it was held that they were not for that reason only, to be rejected. The court declared that the object of that provision was secrecy; that every positive requirement of the statute which, if disobeyed, would defeat its object, was to be regarded as mandatory, otherwise not.

In Sanders v. Lacks, 142 Mo. loc. cit. 263, discussing the same subject, this court per BARCLAY, P. J., said: "The thought underlying those rules is the same that inspires a much older rule for the construction of written laws, namely, that the great purpose aimed at by statute should never be sacrificed by too literal an adhesion to those minor provisions which are obviously intended merely as means to carry out the larger design of the act."

What was the design of the particular provision of the statute we are now discussing? Why did the legislature require that two judges should write their initials on the ballot with such material that it could not be easily erased? It was manifestly to secure the return to the judges of the same paper they gave to the elector. They had no right to look on the inside of the folded ballot, and therefore the only means of identification was that afforded by the initials. Without that mark the person offering to vote could impose another paper on the receiving judge and carry the official

ballot away.   And in furtherance of the same purpose the law imposed on the receiving judge the duty of examining the ballot when it was handed to him by the elector to see if the initials were on it, and forbade him depositing it in the box if it was not so marked.

The argument for contestant is that the forbidding to deposit the ballot in the box is equivalent to forbidding it to be counted if it should be so deposited.   But the one does not naturally follow the other.   The object was not so much to guard against the counting of an illegal ballot, because the ballot itself would bear sufficient other marks by which, when it was opened and inspected, its identification could be established and its validity judged, but the object was rather to guard against a fraud while the election was in progress.   The statute does not say that a ballot not so marked shall not be counted.   It addresses itself to the officer and says to him, examine the ballot to see if it is properly indorsed and if it is not so, do not deposit it.   This duty is to be performed in the presence of the elector; he has the right, and it is a right usually exercised, to stay and see his ballot deposited, or, if it is not deposited, to know why.   If the receiving judge performs his duty and discovers that the ballot is not properly indorsed and therefore to be rejected, the elector is then and there entitled to receive another ballot that is properly marked, and to prepare it and see it cast.   But if the officer neglects his duty, deposits the ballot and the elector departs, the judges can not visit upon him, or upon the candidate voted for, the consequences of their own neglect.   True the elector, if he had been well posted and watchful might have himself seen the defect in the ballot when it was given to him and demanded a perfect one.   But it would be unreasonable to expect of the ordinary elector that he be informed of all the details of the election machinery and watch every point so carefully, and indeed if we should hold him to such accountability

we would open the door to fraud. In the language of BLAKE, V. C., in Grant v. McCallum, 12 Can. L. J. (N. S.), loc. cit. 114: "It must also be borne in mind that if the court lightly interferes with elections on account of errors of the officers employed in their conduct, a very large power may thus be placed in the hands of these men. That which arises from carelessness to-day, may be from a corrupt motive to-morrow, and thus the officer is enabled, by some trivial act or omission, to serve some sinister purpose, and to have an election avoided, and at the same time to run but little chance of the fraudulent intent being proved against him."

When the initials are not on the ballot and the receiving judge fails to inspect it, and deposits it in the box, two wrongs against the law have been perpetrated, a spurious paper has gone into the box, and a genuine official ballot has been carried away. On the count the spurious paper may be detected, but the purpose of the statute to guard against the carrying away of a genuine ballot has been defeated, and the officer who was neglectful of his duty is to blame.

But if the paper that went into the box was a genuine ballot it will show for itself on the count both by its numbers and its face and does not need the initials of the judges to prove its genuineness. At that stage of the proceeding there would be no reason or justice in throwing out the ballot.

The cases in which this court has held that a failure on the part of the election officers to observe any of such duties, would result in depriving an elector of his right to have his vote counted are those in which the statute expressly so declared. [West v. Ross, *supra*; Ledbetter v. Hall, *supra*; Gumm v. Hubbard, 97 Mo. 311.]

But the statute has not so expressly declared in this case, nor do we think the words used were intended to have that signification. The trial court ruled correctly in counting the ballots that were contested on the ground that the initials of the judges were written in pencil not indelible,

and it erred in rejecting those on which there were no initials or the initials of only one judge. There should therefore on this account be added 17 votes to those of the contestant and 39 to those of the contestee.

Deducting from the number of ballots found by the trial court for contestant, viz.: 4375 the 9 rejected ballots erroneously included in that finding and adding the 17 erroneously excluded makes the total number of ballots to which he is entitled 4,382. Adding to the number found by the trial court for contestee the 39 ballots erroneously excluded as above shown makes the total number of ballots to which be is entitled 4,406, resulting in a majority of 23 for the contestee.

There are questions raised as to other ballots, but there will be no use in considering them because if they were all decided in favor of contestant they would not change the result.

The judgment of the circuit court is reversed and judgment will be rendered in this court in accordance with facts above stated that Edward C. Guion the contestee is entitled to the office of constable in controversy and that he have restitution thereof and recover his costs.

All concur, except *Robinson, J.*, absent.