PHILIP J. O'CONNELL vs. RICHARD MATHEWS & others.
SAME vs. SAME.
SAME vs. ENOCH H. TOWNE.
SAME vs. SANFORD C. KENDALL & others.

Worcester.   January 7, 1901. — January 7, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

The provision of St. 1898, c. 548, § 230, that no ballot without the official indorse-
ment except in a certain case provided for shall be deposited in the ballot box,
does not prohibit the counting of such ballots when cast in good faith without
objection.

A cross marked on a ballot in the square opposite a blank and next below the square
opposite the name of a candidate cannot be counted as a vote for such candi-
date.

PETITION for a writ of certiorari against the board of regis-
trars of voters of the city of Worcester, the city clerk of said
city and the board of aldermen of said city and THREE PETI-
TIONS for writs of mandamus against said board of registrars,
said clerk and said board of aldermen respectively, filed Decem-
ber 24, 1900.

The cases were heard by *Morton*, J., on the petitions, de-
murrers and answers, and the parties agreeing thereto, were
reserved by him for the consideration of the full court.

The allegations in the petitions were as follows: That there
was a city election on December 11, 1900, in Worcester. The
petitioner was a candidate for the office of mayor, duly nomi-
nated by the Democratic party, and his name duly printed on
the official ballot, and one William A. Lytle was also a candidate
for the office of mayor, duly nominated by the Republican party,
and his name duly printed on the official ballot; that on the
face of the precinct officers' returns Lytle had a plurality of
forty-one votes; that a recount was duly had before the board
of registrars of voters of said city, under the provisions of stat-
ute of 1898, c. 548, § 264; that said registrars of voters com-
pleted said recount, and found and determined that the petitioner
and said Lytle had each received 8,061 votes, and that there

was a tie vote ; and that said registrars of voters had made, or were about to make, the statement required by statute to the city clerk, and that the city clerk was about to amend, or had amended, the records of votes, according to the statement made by said registrars, and that said clerk was about to transmit to the board of aldermen his record as amended, and the said board were about to declare that there was no election, and issue a writ for a special election.

The petitioner alleged that the recount was illegal and in violation of statute in the following particulars :

That the said registrars of voters received and counted in favor of said Lytle three ballots which were not official ballots, and did not have on the back and outside of them when folded the printed words " Official Ballot of " followed by the designation of the voting precinct for which the official ballot was prepared, the date of election and a facsimile of the signature of the city clerk who had caused the ballot to be prepared, and the said three ballots had no such indorsement thereon and were in that respect, and for that reason, not official ballots and could not, legally, be counted, and the petitioner averred that the reception of said three ballots and the counting thereof were all in violation of the law, and that if said three ballots had not been counted for the said Lytle, the result would have been the election of the petitioner.

The second ground on which the petitioner alleged the said recount to be erroneous and illegal, was that there were seventeen ballots which were counted as blank, as to the vote for mayor, and which should have been counted for the petitioner. The ground for this contention was that the petitioner's name was at the bottom of the list of candidates for mayor on the official ballot, and that next below it was a blank space, as provided by law, in which the voter might write the name of some person other than the names printed on the official ballot, and that on the said seventeen or more ballots a cross was made in the square on the right of and opposite to the blank space, and in the square next below the square which was directly at the right and opposite to the petitioner's name, and the petitioner averred that each of said crosses so made by the voter was intended as a mark opposite to his, the petitioner's, name ; and that it was

erroneous and illegal to reject said ballots, or to count them as blanks, and that the same should have been counted for the petitioner.

The respondents, in all the cases, filed answers, and also demurrers.

The answers set out the facts substantially as stated in the petitions, but the answers of the registrars of voters stated, in addition, that the registrars found as matter of fact that the three ballots first referred to were printed under the direction of the city clerk, and were provided and furnished by him as the public authority required by law, and at the public expense, and were furnished by the city clerk to the precinct officers in the several precincts in which they were cast, and were regularly delivered by the proper precinct officer at each of said several precincts to a voter, and were by such voters marked and deposited according to law in the official ballot box; and that the want of the indorsement was from some mistake, oversight and omission of the person or persons by whom the official ballots were printed.

The demurrers set forth that the writs prayed for do not lie against the respondents; that the petitions do not set out matters of fact and errors of law such as entitle the petitioner to the writs prayed for, and that the decision of the board of registrars is final; and the demurrer of the city clerk and the board of aldermen further set forth that if the jurisdiction of the registrars of voters is not final, the board of aldermen have jurisdiction, and that the petitioner should apply to the board of aldermen for relief.

If the petitioner was entitled to the relief prayed for in any of the petitions, suitable decrees were to be made, otherwise the petitions were to be dismissed.

St. 1898, c. 548, § 1, contains the following definition: "'Official ballot' shall mean a ballot prepared for any election or caucus by public authority and at public expense."

Section 230 of the same statute provides as follows: "A voter after marking his ballot shall give his name and, if requested, his residence, to the presiding officer, who shall distinctly announce the same. It the name is found upon the voting list by the election officer he shall distinctly repeat the name and check

it upon the voting list ; and the voter may then deposit his ballot in the ballot box with the official indorsement uppermost and in sight.  No ballot without the official indorsement, except. as provided in section two hundred and seven of this act, shall be deposited in the ballot box."

The exception is not material to this case, merely providing for the preparation of new ballots when the original ballots have been lost, destroyed or stolen.

*F. P. Goulding,* (*J. B. Ratigan* with him,) for the petitioner.

*A. P. Rugg,* for the respondents.

HOLMES, C. J.   If it be assumed that mandamus will lie and that the questions argued are open, the decisions of the board of registrars were right.  Apart from evidence the form and appearance of the three ballots at least warranted the board in assuming than the ballots were official within § 1 of·the statute.   If official ballots, they were not forbidden to be counted by the words of the statute.   It is true that § 230 prohibits ballots like these being deposited in the box, but this is not equivalent to prohibiting their being counted in case they are deposited without remark.   If not allowed to be deposited, the voter could get a perfect ballot and cast his vote.   If allowed to be deposited and not counted, the voter is disfranchised.   The latter result is not to be admitted without very clear words, and such words would raise a constitutional question which we do not decide.

As to the seventeen ballots with crosses against blanks, the statute clearly intends that the cross shall be against the space for which it counts, §§ 194, 224.   The physical arrangement of the ballots bears an unmistakable meaning and, whatever may be conjectured in cases like this, it is impossible to treat the crosses as if they had been put in a different square.

*Petitions dismissed.*