(No. 23284.—

HARRY L. WATERS, Appellee, *vs.* CHARLES E. HEATON, Appellant.

*Opinion filed June 10, 1936—Rehearing denied October 7, 1936.*

STONE and WILSON, JJ., dissenting.

PATE & COLLORD, and W. W. REEVES, for appellant.

D. H. WAMSLEY, and COTTON & NICHOLS, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

At the election on November 6, 1934, appellant, Charles E. Heaton, and appellee, Harry L. Waters, were, respectively, the Democratic and Republican candidates for the

office of county treasurer of Douglas county. Heaton was declared elected by a majority of 25 votes. He received his certificate of election and qualified. On November 28, 1934, Waters filed a petition to contest the election. Heaton moved to dismiss the petition and challenged the sufficiency of it and of the verification. The circuit court of Douglas county overruled the motion. Heaton filed his answer, and after a re-count of the ballots the court found that Waters had been elected by 4004.86 votes to 3978.14, or a majority of 26.72 votes. This appeal followed.

Appellant takes the position that an election contest petition must be drawn, as well as verified, in the same manner and with the same requirements as a bill in chancery, and that the verification is bad because too few allegations are sworn to as being true in substance and in fact. He points out that the petition contains allegations as to facts of record (particularly in the tenth paragraph, where the result of the canvass is referred to,) which were known or readily accessible to appellee, and that because all the grounds of contest appear subsequent to the first five paragraphs, which alone are sworn to as being true in substance and in fact, the case presented is similar to one where the whole petition is verified on information and belief.

The material part of the affidavit reads as follows: "Harry L. Waters * * * upon oath * * * says that he is petitioner * * * and that the allegations of said petition contained in paragraphs 1, 2, 3, 4 and 5 * * * are true in substance and in fact and that as to the remainder of the matters and facts alleged in said petition this affiant is informed and believes that the same are true and states that the same are true upon his information and belief."

In the first paragraph Waters alleged that he was a citizen of the county and precinct (naming them) and had been for more than two years prior to 1934, and that on the date named he was a resident and legally qualified elector in said county and precinct. The second paragraph

says that the election was held on November 6, 1934, and that Waters and Heaton were candidates for the office of county treasurer, etc., and that their names appeared on the official ballot, etc.; that the election was in all respects regular and the ballots and returns were properly preserved. The third paragraph says that the polls closed as prescribed by statute and that the judges and clerks of election proceeded to tabulate the votes. Paragraph 4 contains the statement that after tabulating the votes the judges and clerks made return to the county clerk, etc. The fifth paragraph states the number and names of the precincts in Douglas county. Paragraphs 6 to 14, inclusive, contain allegations as to irregularities in voting, counting ballots for the wrong candidate, failing to count ballots for the petitioner, voting by disqualified persons, mistakes in counting and tabulating votes, etc. These paragraphs are sworn to only on information and belief. After alleging irregularities in the attempt of voters to cast their ballots under the absent voters statute, the allegation is made that as a result of the illegal and incorrect canvass, etc., Heaton was declared elected, but that if the votes were correctly counted they would show that Waters received 4533 votes to Heaton's 3438. Then follows the prayer for relief and process.

Appellee contends that by filing his answer after the trial court denied Heaton's motion to dismiss, the latter waived his objections to the sufficiency of the petition. Appellee cites *Haley* v. *Reidelberger,* 340 Ill. 154, *Kreitz* v. *Behrensmeyer,* 125 id. 141, and *Jackson* v. *Winans,* 287 id. 382. But since the adoption of the Civil Practice act and Rule 21 of this court such a waiver does not occur when the defendant answers after his motion questioning the sufficiency of the petition has been overruled.

In *MacGuidwin* v. *South Park Comrs.* 333 Ill. 58, 75, we held that a petition to contest an election must set forth the points on which the election is to be contested, must be verified by the proper affidavit, must be filed within the

time prescribed by statute, must allege that the contestant is an elector of the political subdivision in which the election was held, and must comply with all other statutory provisions necessary to give the court jurisdiction. We said: "This court has held that in an election contest where a contestant states by proper allegations generally that he received a certain number of votes cast in the entire voting municipality or district more than his opponent received who by the election returns was declared to be elected, such contestant has the right to have the entire ballots counted to determine the true result of the election." And we quoted from *Leonard* v. *Woolford*, 46 Atl. (Md.) 1025, to the effect that if we were to require the precision and certainty in an election petition as in the pleadings between parties to a suit at law, which pleadings have for their object the production of a single issue, the difficulty of stating precisely the manner in which a fraud had been committed or an undue or incorrect return had been made would to a great degree nullify the law itself, which designs that such charges should be investigated. The Maryland court said: "The rule must not be held so strict as to afford protection to fraud by which the will of the people is set at naught, nor so loose as to permit the acts of sworn officers, chosen by the people, to be inquired into without an adequate and well-defined cause."

In *Smith* v. *Township High School District*, 335 Ill. 346, 351, we recognized the rule that in an election contest the statute must be strictly followed, but we said: "To hold that a petition to contest an election should only contain such allegations of fact as are within the contestant's personal knowledge would be impracticable, for the very nature of the proceeding compels him largely to rely upon information obtained from other persons, and it is obvious that as to such information the contestant can only make oath that he believes the allegations to be true.—*Jackson* v. *Winans*, 287 Ill. 382; *Farrell* v. *Heiberg*, 262 id. 407."

We held the petition sufficient and that the general charge that illegal votes were cast at the election and counted in favor of the proposition submitted, and that without such votes that proposition would have been defeated, to be a sufficient ground of contest.

In *Farrell* v. *Heiberg,* 262 Ill. 407, objection was made to the verification, which said that the matters stated to be true were true in substance and in fact, and that as to statements made on information and belief the affiant believed them to be true. We held the verification to be good and said: "The general rule applicable to the verification of bills in equity is, that the affidavit should be in such form as to subject the party making it to a prosecution for perjury in case the matter sworn to proves to be false. The usual form of verification of bills in equity is, that the party verifying has read the bill subscribed by him (or has heard them read) and knows the contents thereof, and that the same is true of his own knowledge except as to matters which are therein stated to be on his information and belief, and as to those matters he believes them to be true. [Citing authorities.] The statute should have a reasonable construction in order to accomplish the purpose intended. To hold that a petition to contest an election should only contain such statements as were within the contestant's own personal knowledge would be impracticable, since from the very nature of the proceeding the contestant must rely largely on information obtained from others, and as to such information the contestant could only make oath that he believed the statements to be true."

The verification and allegations of the petition were sufficient, and this contention must be overruled.

The only point urged by the appellant that we need consider is that with reference to the validity of ballots initialed by one judge with the initials of another judge of election.

The contestant showed that a few persons voted who were not entitled to vote; that in several precincts the bal-

lots issued by the county clerk to persons who sought to vote in accordance with the Absent Voters act were put into the respective ballot-boxes by election judges without being initialed, and that in two precincts, referred to later, one of the judges initialed ballots with the initials of another judge. In the first of these precincts (Camargo No. 2) contestant claimed there were 140 such ballots, and in the other (Garrett precinct No. 1) that there were 46. However, the number of ballots cast by persons not entitled to vote and of uninitialed ballots was not sufficient to upset the returns, in view of the division of the two kinds of ballots between the two candidates. In the Camargo precinct the trial court found 47 ballots cast for Waters had been initialed by one judge with the initials of the other, and that 80 cast for Heaton should be excluded for the same reason. In the Garrett precinct, Waters lost 17 and Heaton 29 votes on this account. This net loss of 45 votes to Heaton reversed the result of the election.

Appellant contends that the provisions of the act with reference to the initialing of ballots are not mandatory but are directory, and that where there is no fraud shown, as in the case before us, a non-compliance by the judges of election does not invalidate the ballots. In *Perkins* v. *Bertrand,* 192 Ill. 58, we held that the endorsing of a single initial of a judge on a ballot was sufficient. We also held in that case that endorsing the judge's full name on a ballot did not furnish cause to throw out that ballot. And in *Gill* v. *Shurtleff,* 183 Ill. 440, ballots bore endorsements as follows: "Defective ballots." "This ballot objected to. H. M. B." "This ballot objected to and sworn in.—T. J. P." In the *Gill case* we said: "It was proven these words were marked on the ballots by the election officers before they were placed in the ballot-box, and that the voters who prepared and presented them in nowise participated in the endorsement of the writing on the ballots. The court ruled these ballots should be counted as legal ballots for the ap-

pellee. The ballot of one who is legally entitled to vote, and which he has prepared in conformity with the provisions of the statute and delivered to the judges of the election to be deposited in the box, should not be rejected from the count on the ground some one of the election officers, without the participation of the voter, made some endorsement on the ballot which might serve as a distinguishing mark. To rule otherwise would be to declare it to be within the power of the election officers to disfranchise a legal voter." See, also, *Kerr* v. *Flewelling*, 235 Ill. 326.

In *Behrensmeyer* v. *Kreitz*, 135 Ill. 591, it appeared that at one polling place one judge of election made at least ten mistakes in numbering the ballots. There was no evidence of fraud, it appeared that the mistakes were purely accidental, and the election officers also took the ballots, after the election was over, into a different room from that where the voting was done and there canvassed the votes. There were additional irregularities, none of which affected the result of the election. At page 608 of that decision we said: "In *Hodge, Jr.* v. *Linn*, 100 Ill. 397, there was a failure to number any of the ballots cast at the election, and various other irregularities of a character quite as serious as those here involved, and it was there held that the provisions of the statute as to the. mode and manner of conducting the details of an election are not mandatory, but directory, merely, and that irregularities in conducting an election and counting the votes, not proceeding from any wrongful intent, and which deprive no legal voter of his vote and do not change the result, will not vitiate the election or justify the rejection of the entire poll of the precinct in which the irregularities occurred."

In *Hehl* v. *Guion*, 155 Mo. 76, 55 S. W. 1024, the statute required ballots to be initialed by a judge and no ballot not initialed was to be deposited in the ballot-box. It was there held that although a ballot was not initialed

it should be counted, and that the problem was not solved by determining whether the statute was mandatory or directory. The court declared the object of the statute to be to give the judge a means of identifying the ballot when returned by the voter to him, and that where the ballot shows on its face that it is genuine the object of initialing was fulfilled. See, also, *Coulehan* v. *White,* 95 Md. 703, 53 Atl. 786, *O'Connell* v. *Matthews,* 177 Mass. 518, 59 N. E. 195, *Bates* v. *Crumbaugh,* 114 Ky. 720, 71 S. W. 75, and *Bass* v. *Evans,* 244 Mo. 329, 149 S. W. 628.

We have held in such a case that uninitialed ballots must be rejected, (*Slenker* v. *Engel,* 250 Ill. 499,) but the same question is not presented there as is presented here. In the case before us there is no question that in the two precincts named the initialing was done by one judge with the consent of the judge whose initials were used, and there is no suggestion of any fraudulent or improper motive or act. Every purpose was served by such initialing that would have been served had the judge whose initials were used endorsed them on the ballots. In *Laird* v. *Williams,* 281 Ill. 233, 237, we quoted from *Choisser* v. *York,* 211 Ill. 56, where it was said: "Every man's handwriting possesses certain peculiarities which tend to distinguish it from every other handwriting. By writing his initials upon ballots the judge doing so should be able to distinguish those which are genuine, and could generally do so." But in the case before us the proof shows that in both precincts the handwriting of the judge who wrote the initials closely resembled the writing of the judge whose initials were used. In fact, the final result reached by the trial court was arrived at by accepting the net change affected by the deductions stated above in Garrett precinct No. 1 and then relying on the testimony of an expert witness who testified as to the signatures of the two judges in Camargo precinct No. 2, at the rate of $100 per day and expenses, although he had

never seen either of the signatures before the date he testified. These two judges were called and disagreed as to what ballots Anglin initialed with Conn's initials and which bore the genuine initials of Conn.

No great ingenuity is required to make use of the holdings that ballots are thus rendered void and to thwart the will of the voters in any political subdivision. In a close election, through seeming courtesy, one judge of either political party in a single precinct could initial ballots with the initials of another unsuspecting judge and hand them to voters whose political party affiliation is known to the judge doing the endorsing until a sufficient number of ballots would thus be made void to change the entire result of the election. It has been said that it is the duty of the voter to determine whether the ballot handed to him is a proper one and that it is properly initialed, etc., but in the case before us the two judges of election and an expert on handwriting could not agree as to what ballots were such as a voter was entitled to receive and to cast.

The section of the statute as to the initialing of ballots contains no words stating that votes shall not be counted if they are not initialed in strict conformity with the statute. In the absence of proof of fraud or other improper conduct which would affect the result of the election, the statutory provisions, and the section itself, should be held to be directory and not mandatory, and this in spite of the fact that we have held ballots initialed by one judge with the initials of another to be illegal and therefore void in many cases. The words of the section, so far as material, are as follows: "One of the judges shall give the voter one, and only one ballot, on the back of which such judge shall indorse his initials in such manner that they may be seen when the ballot is properly folded, and the voter's name shall be immediately checked on the register list." State Bar Stat. 1935, chap. 46, par. 225; 46 S. H. A. 311.

Statutes giving directions as to the mode of conducting elections will generally be construed as directory unless a failure to comply therewith is expressly declared to be fatal. If such statute merely provides that certain things shall be done in a given manner and time and there is no declaration that conformity to these provisions is essential to the validity of the election, the statute will be construed to be directory and not mandatory. No discretion is given where the terms of the statute are peremptory and explicit and where penalties are imposed against a violation of the terms of the act, the penalties have the same effect as express negative provisions in the statute. 20 Corpus Juris, 181; *Kreitz* v. *Behrensmeyer,* 125 Ill. 141; *Perkins* v. *Bertrand,* 192 id. 58; *Gill* v. *Shurtleff,* 183 id. 440.

We hold that the ballots in Garrett precinct No. 1 and Camargo precinct No. 2, which were initialed by one election judge with the initials of another such judge, should have been counted for the candidates for whom these ballots were cast and that it was error to exclude them.

Such cases as *Laird* v. *Williams,* 281 Ill. 233, *McNabb* v. *Hamilton,* 349 id. 209, and *Blattner* v. *Dietz,* 311 id. 445, which hold that ballots initialed by one judge with the initials of another judge are *ipso facto* illegal are overruled in so far as they conflict with this opinion.

The judgment of the trial court is reversed, and appellant, Charles E. Heaton, is declared elected county treasurer of Douglas county by 4087.14 over appellee, Harry L. Waters, who received 4068.86 votes.

*Judgment reversed.*

STONE and WILSON, JJ., dissenting.