(No. 26582.—

BEN F. WOOD, Appellant, *vs.* HARRY T. HARTMAN, Appellee.

*Opinion filed November 17, 1942—Rehearing denied Jan. 15, 1943.*

Murphy, J., dissenting.

Stone, C.J., specially concurring.

Smith, J., took no part.

JESSE R. BROWN, and PERRY H. HILES, for appellant.

JOHN B. HARRIS, and CHESTER H. FARTHING, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

On November 8, 1938, an election was held for the office of county treasurer of Madison county. The result of the canvass of the votes was that Harry T. Hartman, the nominee of the Democratic party received 24,382 votes and Ben F. Wood, the Republican candidate, 24,262, this giving Hartman a margin of 120 votes. He qualified and assumed the duties of his office. Wood filed a petition in the county court of Madison county to contest the election, and on April 19, 1939, Hartman filed an answer to the petition of plaintiff. On February 3, 1939, Wood prayed a change of venue which was subsequently granted and, by agreement of the parties, one of the judges of the city court of East St. Louis was called in to hear the cause as provisional judge by the sitting judge of said court. An extended hearing followed in the county court of Madison county and the court found that Wood had received 24,-224.892 votes and Hartman 24,323.108 votes, giving Hartman a margin of 98.216 votes. The petition was dismissed and Hartman's election confirmed. From that decision Wood has appealed to this court.

While the abstract of the record contains over 350 pages and covers all of the evidence taken at the hearing, the questions on this appeal are limited to those pertaining to the ballots as cast in precinct No. 1, Collinsville township. A decision as to those ballots determines the result of the election. The pollbook of this precinct contains 729 names. Out of the total vote cast in the precinct, only four ballots bore the initials of one of the judges of election. The only semblance of a means of identification of the other ballots

was a check mark, uniform in size, which was located to the right of the *facsimile* signature of the county clerk. Wood's offer of the ballots voted for him made no distinction between those bearing an endorsement of initials and those endorsed with the check marks. Hartman made no objection as to the character of the endorsement and all were counted and included in Wood's total. The re-count gave Wood 217 votes. Hartman's offer of those ballots voted for him was the same as that made by Wood and included those endorsed with the check mark. Wood interposed an objection to all ballots not initialed. After disposing of objections of a different character directed to only a few ballots, the court overruled the objections as to initialing and counted them for Hartman. He received 452 votes in the precinct.

Apparently from the evidence there was no fraudulent motive in the judges' failure to initial the ballots and such failure was a mistake on their part under the belief that check marks were sufficient in order to comply with the statute. However, in either case, whether with fraudulent motive or an honest mistake, the failure to initial the ballots presents a serious question to be determined by this court.

The question to be determined is controlled by sections 22 and 26 of the Australian Ballot Law (Ill. Rev. Stat. 1941, chap. 46, pars. 311 and 315.) That part of section 22 involved in this case provides, "One of the judges shall give the voter one, and only one ballot, on the back of which such judge shall endorse his initials in such manner that they may be seen when the ballot is properly folded and the voter's name shall be immediately checked on the register list." Section 26 provides in part that "No ballot without the official endorsement shall be allowed to be deposited in the ballot box, and none but ballots provided in accordance with the provisions of this act shall be counted."

Many cases involving the requirements of the statute as to initialing have been presented to this court. Wood's contention is, that the provisions of the above act are mandatory and that the prior holdings support such construction. His brief, as well as the brief of Hartman, is devoted to an analysis of those cases pertaining to the construction to be placed on the above statute as to whether or not it is directory or mandatory. Wood contends it is mandatory while Hartman contends that the statute, as applied to the facts in this case, is directory and relies upon the holdings in cases such as *Waters* v. *Heaton,* 364 Ill. 150; *Neff* v. *George,* id. 306, and *Boland* v. *City of LaSalle,* 370 Ill. 387.

As an alternative, Hartman contends that even though the failure to initial the ballots rendered them fatally defective, Wood is in no position to object since he offered and counted ballots for himself which were not initialed.

When we observe the record at the bottom of page 310 of the abstract we see that attorneys for Wood both objected to counting the ballots of Hartman because they did not bear the initials of any judge in that precinct. At no time did attorneys for Hartman object to the introduction of similar ballots in favor of Wood.

From the record it appears at the time of the trial when the ballots were offered for Wood, there were no objections made by Hartman; that Wood did object to such ballots as offered on behalf of Hartman, which objections were overruled. The question to be considered, which goes to the merits, is whether or not the ballots not initialed should be counted. Wood contends that such ballots are made void by sections 22 and 26 of the Ballot Law, and cites in his brief a number of cases in support of his theory, two of which are *Waters* v. *Heaton, supra,* and *Neff* v. *George, supra,* in which it was contended the requirements of sections 22 and 26 of the Ballot Law as to the manner of initialing ballots are directory and not mandatory. Hart-

man contends that section 22 of the Ballot Law (Ill. Rev. Stat. 1937, chap. 46, par. 311, p. 1479,) was declared to be directory and not mandatory, and cites the decisions of *Waters* v. *Heaton, supra,* and *Neff* v. *George, supra.*

In reading the *Waters* and *Neff cases, supra,* we find that the involved ballots there were initialed by one judge with the initials of another, while in the instant case the ballots were not initialed by any judge. Under the facts presented in the *Waters* and *Neff cases, supra,* we held that such ballots were valid and should be counted. We find however, in the later case of *Lacy* v. *Rhodes,* 369 Ill. 167, where it was contended that section 22 of the Ballot Law was directory and not mandatory, citing the *Waters* and *Neff cases,* this court held that uninitialed ballots are made void by sections 22 and 26 of the Ballot Law and it was error to permit uninitialed ballots to be counted.

After reviewing the *Waters* and *Neff cases, supra,* this court, referring with approval to the case of *Sibley* v. *Staiger,* 347 Ill. 288, said: "While it is a rule that mistakes or omissions of the officers in charge of an election will not defeat the plainly expressed will of the voters, yet the rule does not apply where the officers have failed to perform mandatory duties of a precautionary character which safeguards the votes of the electors. (*Allen* v. *Fuller,* 332 Ill. 304; *People ex rel. Vance* v. *Bushu,* 288 id. 277.) The circuit court properly excluded the proof offered by the appellant respecting the forty-nine ballots lacking the initials of a judge of election and it correctly decided that none of them should have been counted."

This court further, in the recent case of *Barlick* v. *Kunz,* 375 Ill. 318, citing the case of *Lacy* v. *Rhodes, supra,* as authority, held that the initialing requirement of ballots is mandatory, and that while the rule that mistakes or omissions of officers in charge of election will not defeat the plainly expressed will of the voters, such rule is inapplicable where the officers have failed to perform man-

datory duties of a precautionary character which safeguards the votes of the electors. We believe that sections 22 and 26 of the Ballot Law were enacted for this purpose, and if it is permitted in an election for ballots to be cast without the initials of the judges, we would be taking away the protection given by such sections. To make such a recommendation would be approving the conduct of election judges who failed to perform their mandatory duties and would not only militate against what we have been trying to do for many years,—protect and safeguard the votes of the electors,—but would be contrary to the statute as to its mandatory provisions. Uninitialed ballots are therefore made void by sections 22 and 26 of the Ballot Law and the county court of Madison county was in error in permitting such uninitialed ballots to be counted.

In presenting his alternative contention Hartman invokes the well established principle that a party cannot complain of an error which he also committed. That this principle is well established in the law and has been applied in many cases on the introduction of the evidence and the giving of instructions, cannot be disputed. However, in election contests a different situation exists as to presenting evidence. The right to contest the election of an individual to office is not a common law right, but exists only by statute, and the action is neither at law nor in equity, though the proceedings are governed by rules of chancery practice. (*Olsen* v. *Scully,* 296 Ill. 418; *Brelsford* v. *Community High School District,* 328 id. 27.) It has been held by this court that a proceeding to contest an election is to all intents and purposes a chancery proceeding. *Dale* v. *Irwin,* 78 Ill. 170; *Quartier* v. *Dowiat,* 219 id. 326.

In the first instance preliminary proof is necessary in order that a showing be made that the ballots have been properly preserved and are in the same condition as when cast. When this showing is made they are the best evidence of the result. *Sibley* v. *Staiger, supra.*

Hartman cites no authority in an election contest case in which the above principle contended for as to the evidence has been followed. He has cited many cases where the evidence and the instructions offered have been objected to, objections overruled or sustained, the question thereby being saved for consideration on appeal. In election contests, after the proper foundation has been laid, the ballots are before the court to be counted, and the sole question to arise and to be considered is as to whether or not the ballots are legal or illegal. The contestant in an election contest is not confined on the recount to the mistakes and errors alleged in his petition, and if the court undertakes a recount of the ballots it must count them all and declare the result according to their legal effect. *Hennessy* v. *Porch*, 247 Ill. 388.

The question, then, presented to the county court as well as the court here is as to the legality of the ballots. It is not at all clear in the record whether or not the ballots from precinct No. 1, Collinsville township, which were admitted in behalf of Wood, were ever introduced in evidence and whether they were or did not affect the general result of the election and there is also some doubt from the record as to whether or not any ruling of the lower court as to the ballots not objected to and counted for Wood, was properly preserved for consideration by this court.

Election contests present questions of public interest and are governed by the rules applicable to chancery cases and this would not be changed by reason of the amendment to section 116 of the act pertaining to contesting elections (Ill. Rev. Stat. 1941, chap. 46, par. 119, p. 1419,) which provides in part, "The case shall be tried in like manner as other civil cases." Such election contests are tried without a jury and it has been held that in suits in equity and cases at law tried without a jury, even though evidence is erroneously admitted, such evidence need not be considered

by the court on appeal, though admitted without objection. In the case of *Faunce* v. *Wood,* 55 App. D. C. 330, 5 Fed. (2d) 753, 40 A. L. R. 208, in reviewing a proceeding in a chancery case before assuming to direct a decree below, the court carefully scrutinized the evidence and rejected that which had been improperly admitted, whether over objection and exception or not. This seems to be the view particularly in suits in equity and actions at law without a jury, the view being taken, that evidence erroneously admitted, need not be considered by the reviewing court even though it was admitted without objection. (Am. Jur. 3, par. 836, p. 380; *Blagen* v. *Smith,* 34 Ore. 394, 56 Pac. 292, 44 L. R. A. 522.) This rule of law was announced as far back as *Field* v. *United States,* 9 Peters, 182, where, at page 202, it was held that where the court decides the fact and the law without the intervention of a jury, the admission of illegal testimony, even if material, is not of itself a ground for reversing the judgment nor is it properly the subject of a bill of exceptions. If evidence appears to have been improperly admitted, the reviewing court will reject it and proceed to decide the case as if it was not in the record.

Justice Marshall, who handed down the opinion in the above case, at page 202, in part, said: "But if the district court improperly admitted the evidence, the only effect would be that this court would reject the evidence and proceed to decide the cause as if it were not in the record." This rule as laid down by Justice Marshall was further approved and followed in the case of *United States* v. *King,* 7 Howard, at p. 833, 854 and 855.

It was held in the case of *Shikes* v. *Gabelnick,* 273 Mass. 201, 173 N. E. 495, 87 A. L. R. 1339, that a reviewing court on appeal, when the evidence is reported, may enter such decree as justice requires. And in the case of *Likowski* v. *Catlett,* 130 Okla. 71, 265 Pac. 117, 57 A. L. R. 517, it was held that in equity cases the reviewing court will weigh the evidence and render the judgment.

Applying this rule of law to the instant case, the question as to whether or not the ballots, which question, in this instance, has been confined to precinct No. 1, Collinsville township, were valid or invalid would be considered by this court regardless of the manner of their introduction, or by whom introduced; and such would be the case in all election contest cases in the counting of ballots where the question is properly presented for consideration. Following this principle of law, which we believe is sound, the alternative contention of Hartman could not prevail, as the reviewing court must reject improperly admitted evidence. The right to consider the validity of the ballots, could not be restricted by objection or want of objection to their introduction in the court below. It is further fair to infer from the record that the invalid ballots were admitted erroneously by the county court at the request of both parties and, as to the introduction of this erroneous evidence, it would seem they are both in the same position. Hartman stood by without objection and permitted the illegal ballots to be counted and at the same time offered the same kind of evidence which was objected to. He now seeks some advantage of error in which he had some responsibility by failing to object and also introducing the same kind of evidence. To say that he should be permitted to inject a procedural question into the case which would eliminate a fair trial on the merits would, in our opinion, be taking an undue advantage of a condition brought about not entirely without fault on his part. In election contest cases and especially as to the mandatory provisions of the statute where matters of a precautionary nature are involved when counting ballots under such mandatory provisions, we do not think this court can consistently follow the rules laid down without determining the case on its merits.

The county court in its decree found Ben F. Wood, plaintiff-appellant herein, received a total of 24,224.892 votes for the office of county treasurer of Madison county

and that Harry T. Hartman, defendant-appellee, received 24,323.108 votes for such office and was declared elected by a plurality of 98.216 votes. In this count is included for Wood the 217 invalid ballots and in the count of Hartman, 452 invalid ballots. Deducting the invalid ballots, as shown above, which should not have been counted, would leave Wood with 24,007.892 legal ballots and Hartman 23,871.108 legal ballots, electing plaintiff-appellant, Ben F. Wood, to the office of county treasurer of Madison county by a plurality of 136.784 votes.

The judgment of the county court, including the judgment for costs, is reversed and the cause remanded with directions to enter an order and judgment in conformity with the views herein expressed and declaring plaintiff-appellant, Ben F. Wood, to have been elected to the office of treasurer of Madison county.

*Reversed and remanded, with directions.*

Mr. Justice Murphy, dissenting.

Mr. Chief Justice Stone, specially concurring:

I concur in the result of this opinion and the holding that the ballots bearing only a check mark do not meet the requirement of the statute that "one of the judges * * * shall endorse his initials" on the ballot. Ill. Rev. Stat. 1941, chap. 46, par. 311-15.

I am further of the opinion that *Waters* v. *Heaton,* 364 Ill. 150, and *Neff* v. *George,* id. 306, in both of which cases I dissented, should be overruled as they are in harmony with neither the earlier decisions of this court construing the above-quoted language (*Sibley* v. *Staiger,* 347 Ill. 288; *Allen* v. *Fuller,* 332 id. 304; *People* v. *Bushu,* 288 id. 277; *Blattner* v. *Dietz,* 311 id. 445; *Kelly* v. *Brown,* 310 id. 319; *Neal* v. *Odle,* 308 id. 469; and *McCreery* v. *Burnsmier,* 293 id. 43) nor its later pronouncements holding not only that the language of the statute is clearly man-

datory, but is necessarily so to safeguard the ballot. *Barlick* v. *Kunz,* 375 Ill. 318; *Lacy* v. *Rhodes,* 369 id. 167.

The construction of this act in *Boland* v. *City of LaSalle,* 370 Ill. 387, was justified under the rule announced in the *Heaton* and *Neff cases* on which that case relies, but it, with those cases, I am of definite conviction, not only ignores language of the statute as plainly mandatory as human expression can make it, but opens the door to carelessness and to fraud, and should not be adhered to.

The right of franchise is the one act of sovereignty open to all qualified American citizens, and courts should be at least as jealous in their protection of that right as the General Assembly passing the act to safeguard it. As was said in *Sibley* v. *Staiger, supra,* "While it is a rule that mistakes or omissions of the officers in charge of an election will not defeat the plainly expressed will of the voters, yet the rule does not apply where the officers have failed to perform mandatory duties of a precautionary character which safeguard the votes of the electors."

While the proper construction and application of the statute may result in the loss of franchise to a voter in some instances, by far the greater good is to be derived from construing the language in accordance with its plain meaning and intent. As this court said in *People* v. *Bushu, supra,* "It is far better that the people of a town shall lose their vote in a single instance than that there shall be written into the law rules which permit election officers to disregard the plain mandates of those provisions of the law intended to protect and safeguard the ballot."

Mr. JUSTICE SMITH took no part in the consideration or decision of this case.