(No. 14445.—Writ awarded.)

THE PEOPLE *ex rel.* Samuel Iddings, Petitioner, *vs.* OTTO
DREHER *et al.* Respondents.

*Opinion filed February 22, 1922.*

1. MANDAMUS—*mandamus is proper remedy to compel restoration to office.* As a general rule, title to a public office cannot be adjudicated on an application for *mandamus,* but *mandamus* is a proper remedy to restore a party to the possession of an office from which he has been illegally removed.

2. SAME—*city council may be compelled by mandamus to permit mayor to discharge his duties.* *Mandamus* will issue in a proper case to compel a city council to desist and refrain from interfering with a public officer, such as mayor, in the discharge of his duties.

3. MUNICIPAL CORPORATIONS—*powers of a municipal corporation are prescribed by legislature.* A city or city council has no inherent powers but may exercise only such powers as are clearly and unmistakably delegated to it by the legislature in express words, or such as are necessarily implied from those expressly given or indispensable to the declared objects and purposes of the corporation, and an enumeration of powers will operate to exclude such as are not enumerated.

4. SAME—*extent to which mayor is a member of the council.* A mayor can be considered a member of the city council only in regard to his duties to preside over its deliberations and to cast a deciding vote in case of a tie, and is not subject to removal, as other members of the council, by a two-thirds vote.

5. SAME—*city council cannot remove a mayor from office.* A city council cannot remove a mayor from office, but the legislature has provided, in section 14 of article 2 of the Cities and Villages act, for such removal by indictment and conviction in court for malconduct or misfeasance, and authorizes the court in which conviction is had to enter an order for removal.

6. CONSTITUTIONAL LAW—*legislature may provide for removal of all officers below grade of State officers, except judicial officers.* Except as to judicial officers there is no prohibition or limitation in the constitution on the power of the legislature to prescribe the means by which all officers below the grade of State officers may be removed from office.

ORIGINAL petition for *mandamus.*

HAROLD F. TRAPP, and McCORMICK & MURPHY, for petitioner.

E. W. MONTGOMERY, and COVEY & WOODS, for respondents.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

The relator, on leave, filed in this court an original petition for *mandamus,* setting out that he had been elected mayor of the city of Atlanta; that said city was organized under the general laws of this State, and that respondents were elected members of the city council and other officials of said city, as set out in the petition; that the relator and respondents qualified for the particular positions to which they had been elected. The petition also alleges that on the 5th day of September, 1921, there were presented to the city council by one of the members thereof certain charges against him as mayor, charging that he willfully neglected and refused to discharge the duties of his office and had been guilty of improper conduct in the discharge of his official duties in accordance with certain specifications set out in the written charges filed. The first was, that he had refused to sign three warrants of the city treasurer of the city of Atlanta for bills duly allowed and by the city council ordered paid; second, that he, as mayor, was served with process of summons in a certain suit brought against the city by Frank Cheek for $160 and refused and neglected to report the same to the council but permitted judgment to be rendered against the city and made no defense, and did not appeal from said judgment and did not report the judgment to the city council as he was required by law to do; third, that he caused to be paid from the city treasury a claim not presented to or allowed by the city council or by it ordered paid; fourth, that he caused to be dismissed a complaint issued in favor of the city against

Francis Steinaker on a charge of gaming, without the consent of the city council, and that Steinaker was afterward indicted by the grand jury of Logan county on the same charge under the State law and entered a plea of guilty thereto in the circuit court; fifth, that the relator, contrary to law, took charge of the city waterworks system and refused to allow the person ordered by the city council to operate the same but caused the waterworks plant to be locked up and thereby caused a water famine to the inhabitants so that good drinking water could not be obtained for a space of two days, and that by his conduct as mayor he had demonstrated that he was incompetent to discharge the duties of mayor of the city. A committee was appointed to determine whether or not the charges were well founded and to report back to the city council. The committee reported that the charges as filed were sustained by proof and recommended that the matter be heard by the city council. On the 15th day of September the city council found that the charges as specified were sustained against the relator, and by resolution declared that he be removed from the office of mayor of the city of Atlanta and the office declared vacant. The prayer of the petition for *mandamus* is, that the writ issue commanding the members of the city council and the city officials to permit the relator to perform the duties of mayor of the city of Atlanta; to preside at meetings and exercise the rights and perform the duties of mayor without interruption; to make appointments provided by law to be made; to sign warrants and claims, and to perform without interference the duties and exercise the rights of the office of mayor. The answer admits the election and qualification of the relator as mayor and that charges were preferred against him and a resolution passed removing him from office, as alleged in the petition. The answer denies, however, that the relator is qualified to act as mayor but avers that the charges set out in the specifications filed before the city council are

true; that he has on divers occasions disgraced the respectable inhabitants of the city and has interfered with the transaction of the business of the city. Numerous cases of alleged misconduct are set up in the answer. The relator demurred to the answer, and the cause comes on for hearing on the petition, answer and demurrer.

As a general rule, title to a public office cannot be adjudicated on an application for *mandamus*. (*People* v. *Cover,* 50 Ill. 100; *People* v. *Head,* 25 id. 287; *People* v. *Matteson,* 17 id. 167.) *Mandamus* is, however, a proper remedy to restore a party to the possession of an office from which he has been illegally removed. (*Delahanty* v. *Warner,* 75 Ill. 185; *Street* v. *Gallatin County,* Breese, 50; 26 Cyc. 260.) So it has been held that *mandamus* will issue in a proper case to compel a city council to desist and refrain from interfering with a public officer, such as mayor, in the discharge of his duties. (*Commonwealth* v. *Reid,* 265 Pa. 328.) The question in the case is whether or not the city council may, for the misconduct of a mayor, remove him from office.

Articles 2 and 3 of the Cities and Villages act set out the various duties of the offices of mayor and aldermen. From that act it will be seen that the functions of city government are under the control of the mayor, city council and other officers elected. Respondents contend that by article 3 (Hurd's Stat. 1917, p. 315,) express power is given to the city council to remove a mayor from office; also that the city council has such power by necessary implication from and incidental to the express powers granted. Governmental powers reside primarily with the people. The constitution of this State is a limitation upon the powers placed thereon by the people themselves. The powers not thus taken away or limited are reserved to the people and exercised by them through the legislature and other departments of the State government. Cities and villages and other municipal corporations are creatures of the legisla-

ture. They derive their existence and all of their powers from that body. There is, therefore, no such thing as inherent power in any municipality which is created by legislative enactment. A city or city council may exercise only such powers as are clearly and unmistakably delegated to it by the legislature in express words, or such powers as are necessarily implied from those expressly given or indispensable to the declared objects and purposes of the corporation. (*Stoessand* v. *Frank,* 283 Ill. 271; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264.) If doubt exists concerning a grant of power to a city or village the doubt is to be resolved against the municipality. Enumeration of the powers operates to exclude such as are not enumerated. *City of Chicago* v. *Ross,* 257 Ill. 76; *City of Chicago* v. *M. & M. Hotel Co. supra; People* v. *City of Chicago,* 261 Ill. 16.

Section 7 of article 3 of the Cities and Villages act provides that the city council may punish a member for disorderly conduct and expel him on a two-thirds vote. Respondents contend that the mayor is a member of the city council and as such is subject to removal from office by that body. Article 2 of the act relates to the duties of mayor. It provides that he shall be chief executive officer of the city. Independently of the city council, as chief executive officer of the city he may exercise powers by law conferred upon sheriffs to suppress disorder and keep the peace; he may release any person imprisoned for a violation of the city ordinances; he has power to examine and inspect books and records and papers of an agent, employee or officer of the city; he is required to give the council information concerning the affairs of the city; he is required to see that the laws and ordinances are faithfully executed; he has power, when necessary, to call on every male inhabitant of the city over the age of eighteen years to aid in enforcing the laws and ordinances, and to call out the militia in suppressing riots, when necessary. Article 3 of

the act treats of the city council, its membership, powers, government and proceedings. Section 1 of that article provides that the city council shall consist of the mayor and aldermen. Under section 6 of said article the city council shall be judge of the election and qualification of its own members, and it is urged, therefore, that since by section 1 the mayor is a member of the city council and by section 7 the city council may expel one of its own members, the mayor in this case was properly removed from office.

Even if it be conceded that the mayor is a member of the city council, it will be seen that he, as chief executive officer of the city, occupies a position in the executive department of city government,—a co-ordinate branch and not a part of the legislative branch,—and any power possessed by the city council concerning his removal, if it had such power, could not extend to removing him from office as chief executive officer of the city. The mayor can be considered a member of the city council only so far as pertains to his duties to preside over its deliberations and to cast a deciding vote in case of a tie. Other than those, his duties are more formal than substantial. (*Winter* v. *Thistlewood*, 101 Ill. 450; *McLean* v. *City of East St. Louis*, 222 id. 510.) That he is not to be taken as a member of the city council will be seen in the fact that while the Cities and Villages act gives the city council authority to judge of the election and qualification of its own members it does not give that body such authority over the mayor. The statute relating to elections provides that an election contest for the office of mayor shall be heard by the circuit court. (Hurd's Stat. 1917, chap. 46, sec. 97.) The right conferred upon the city council to expel a member rests upon the language found in section 7 of article 3, which provides that the city council "shall determine its own rules of proceeding, punish its members for disorderly conduct, and with the concurrence of two-thirds of the aldermen-elect, may expel a member," etc. Section 14 of article 2,

pertaining to the powers and duties of mayor, provides the manner in which a mayor may be removed from office and the offenses that may be made the basis of such removal. That section is as follows: "In case the mayor or any other municipal officer shall at any time be guilty of a palpable omission of duty, or shall willfully and corruptly be guilty of oppression, malconduct or misfeasance in the discharge of the duties of his office he shall be liable to indictment in any court of competent jurisdiction, and, on conviction, shall be fined in a sum not exceeding one thousand dollars; and the court in which such conviction shall be had shall enter an order removing such officer from office."

It is evident from these provisions of the act that the legislature has not conferred upon the city council authority to remove a mayor from office but has provided the means by which such removal may be secured. There is no prohibition or limitation in the constitution of this State on the power of the legislature to prescribe the means by which officers, other than judicial officers, below the grade of State officers may be removed from office. That power, therefore, rests entirely in the hands of the legislature. (*Donahue* v. *County of Will,* 100 Ill. 94.) The legislature has prescribed the means by which a mayor may be removed from office, and in so doing has given the city council no express powers concerning such amotion. In view of the fact that such removal is provided for by statute it cannot be said that the power of removal is one necessarily incident to the express powers given the city council. We are of the opinion, therefore, that the city council is without authority to remove a mayor from office.

The writ will be awarded as prayed.

*Writ awarded.*