(No. 24842.—

WILLIAM BOLAND, JR., *et al.* Appellants, *vs.* THE CITY OF LASALLE, Appellee.

*Opinion filed December 19, 1938—Rehearing denied Feb. 8, 1939.*

388

JONES and FARTHING, JJ., dissenting.

HAMILTON, BLACK & KLATT, DUNCAN & O'CONOR, and JAMES EUGENE MALONE, JR., (E. BENTLEY HAMILTON, A. J. O'CONOR, and GEORGE L. HERBOLSHEIMER, JR., of counsel,) for appellants.

W. J. APLINTON, City Attorney, and ARTHUR H. SHAY, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

In October, 1937, the electors of the city of LaSalle voted on a single ballot upon three questions of public policy to determine whether the city should acquire and operate a municipal electric light and power plant. The first was to determine whether the city should establish, acquire or construct such public utility; the second, to ascertain whether it should operate a public utility of such character and, third, whether it should issue not to exceed $925,000 of mortgage certificates to pay the cost of constructing and establishing the utility. The election returns showed that the first two propositions carried by decisive margins but the third question received a majority of only six votes. The election was contested in the circuit court

of LaSalle county, where it was held all three propositions had carried, the third by a majority of 5.08 votes. In this appeal the appellants (contestants) have abandoned all contest as to the first two propositions and only question the holding of the trial court on the third. The parties to this appeal stipulated in the circuit court, among other things, as follows: "That at the conclusion of the count of the ballots upon which respective counsel were able to amicably agree, and before the submission of the disputed ballots to the court for his decision thereon, the total number of ballots counted in the several wards for and against the several propositions by counsel for the parties hereto was as follows: * * * Prop. III, Total—For: 2019; Against: 2016." This gave a majority of three votes in favor of the third proposition. In this court, so far as contested ballots and allegedly illegal votes are concerned, appellants question the holding of the circuit court on only twenty ballots and confine their brief and argument to those twenty. Other points are briefed and argued, but they have nothing to do with the determination of the validity or invalidity of the twenty questioned ballots and votes. We will consider those ballots and votes in the order they have been presented in the briefs.

Ballot exhibits No. 2 of the first ward and No. 2 of the fifth ward were each cast against proposition three, but were excluded by the trial court because the judge's initials on the back of each ballot had been penciled out. The initials "J. N." for John Novak, one of the judges, on the ballot from the first ward are clearly distinguishable, by the use of transmitted light alone, and the circuit court erred in rejecting this ballot. The fifth ward ballot carried such heavy and black pencil smudges over the place where the judge's initials usually appeared that it is impossible to discern any certain initials. At the lower side of the black cancellations, however, certain lighter pencil marks appear to have been made by a pencil not so blunt

and heavy as that used for the cancellation. While it can not positively be said that these lighter marks were fractional parts of a judge's initials, yet it seems reasonable to assume that whoever canceled so heavily that particular spot on the back of the ballot was attempting to cover up something which appeared there. Election judges are presumed to have done their duty in so far as the contrary is not shown. (*Winn* v. *Blackman,* 229 Ill. 198; *Dooley* v. *VanHohenstein,* 170 id. 630; *Kreitz* v. *Behrensmeyer,* 125 id. 141.) One of their duties is to initial all ballots. No voter should be disfranchised because some unauthorized person has deliberately marked upon his ballot, whether done innocently or not. Nor is every pencil scratch or marking on the ballot, in addition to that required to indicate the voter's choice, necessarily a distinguishing mark, even where obviously made by the voter himself. Thus, an index hand drawn opposite the name of a candidate and pointing to such name, and small marks on the back of a ballot, have been held not to be distinguishing marks. (*Winn* v. *Blackman, supra; Rexroth* v. *Schein,* 206 Ill. 80; *Parker* v. *Orr,* 158 id. 609.) Whether a given marking is a distinguishing mark is largely a question of fact to be determined from an inspection of the original ballot. (*Bullman* v. *Cooper,* 362 Ill. 469; *Kerr* v. *Flewelling,* 235 id. 326; *Winn* v. *Blackman, supra.*) Our inspection of the original ballot, exhibit No. 2 of the fifth ward, leads us to conclude that some judge, in accordance with his duty, initialed the back of this ballot, and that the over-marking of such initials, whether by the voter or by some other person, and whether made through mistake or inadvertence, was not such an act as would furnish means of identifying the ballot, in order to evade the law as to its secrecy. This ballot, regular in all other respects, should also have been counted as a "No" vote.

Ballot exhibits No. 3 of the second ward, No. 7 of the first precinct of the seventh ward, and No. 2 of the second

precinct of the seventh ward, were all excluded by the circuit court because the voters in each case made the cross over the printed word "No" on the third proposition, instead of in the blank space adjoining. The question is whether these three ballots were marked in accordance with the statutory requirements. (Ill. Rev. Stat. 1937, chap. 46, par. 305.) That paragraph of the statute applicable requires that two spaces must be left on the right hand margin thereof, the space for the votes favoring the measure to be designated by "Yes" and for those opposing the measure to be designated by "No." A form is given in the paragraph, wherein the left part of each space is given over to its appropriate character and is separated by a vertical line from the blank area that lies to the right of the character. The law does not favor the disfranchisement of voters but where, as here, the voter has marked over the word "No," and has failed to mark a cross in the square opposite or against the proposition he desires to vote for, his vote cannot be counted. The trial court properly rejected these three ballots.

Ballot exhibit No. 2 of the fourth ward was voted "No" on the third proposition, and the circuit court improperly rejected it because it was marked with the initials of an election clerk and not those of an election judge. The statute requires that a ballot bear the initials of an election judge of the particular precinct involved, (Ill. Rev. Stat. 1937, chap. 46, par. 311,) but we held in *Waters* v. *Heaton,* 364 Ill. 150, and *Neff* v. *George,* 364 id. 306, that the section of the statute as to the initialing of ballots contains no words stating that votes shall not be counted if they are not initialed in strict conformity with the statute. In the absence of proof of fraud or other improper conduct which would affect the result of the election, the statutory provisions, and the section itself, are directory and not mandatory. The initialing of the ballot is something with which the voter has nothing to do, and the penalty of disfranchise-

ment is too severe a burden to impose upon a voter, where, in the absence of fraud, the ballot is improperly initialed. This vote should have been counted.

Ballot exhibits No. 6 and No. 7 of the fourth ward were votes against the third proposition. The trial court refused to count them because exhibit No. 6 contained an indecent expression and exhibit No. 7 had the expression "You Big Fool" written thereon. With women now serving on nearly all of our election boards, any·voter who writes obscene and indecent expressions on his ballot deserves to be disfranchised, as a matter of public morals and decency. Regardless of this, the expressions on the two ballots here plainly served to distinguish them from all the others, contrary to the law which seeks to maintain the secrecy of voting. The trial court very properly held these two ballots invalid.

Ballot exhibits No. 1 of the fifth ward and No. 1 of the first precinct of the sixth ward were marked with crosses against the word "No" of the third proposition. The circuit court rejected these two ballots because the word "No" was·also written upon the backs. This written "No" was placed upon each ballot either by the voter or by an election official. Examination of the two ballots discloses that on exhibit No. 1, fifth ward, "No" had not been crossed out, while on exhibit No. 1, first precinct of the sixth ward, the "No" had been crossed out by three pencil lines. In other particulars these two ballots were without defects. In *Pierce* v. *People,* 197 Ill. 432, we said: "The distinguishing mark prohibited by the statute is such a mark as will separate and distinguish the particular ballot from the other ballots cast at the election. It is some sort of mark put upon the ballot to indicate who cast it and to furnish the means of evading the law as to secrecy." After quoting the above in the case of *Rexroth* v. *Schein, supra,* we added the following observation: "Therefore, not every mark made by a voter on his ballot which may separate

and distinguish the particular ballot from other ballots cast at the election will necessarily result in the declaration that the ballot is invalid." So far as the record shows, it would be reasonable to assume that these two ballots were innocently marked "No" on their backs by election officials as they were piled or arranged for tabulation. We cannot indulge in the more violent assumption that some person interested in the propositions carrying sought to invalidate a negative ballot, or that one of the election officials committed a criminal offense for that purpose. The invalidation of what are otherwise good ballots, and the consequent disfranchisement of legal voters, should not rest upon vague surmise or assumption not warranted by the record. The most charitable view, and to our minds the most reasonable, is that the election officials marked "No" on the backs of these two ballots as a matter of convenience while stacking and counting them and then, in one instance, marked across the "No." No basis exists, under the record here and authorities previously cited, for disfranchising the voters of these two ballots on the theory that the voters had placed distinguishing marks upon them. The circuit court erred in rejecting these two ballots.

Ballot exhibit No. 8 of the second ward evidenced the intent of the voter to vote "Yes" upon the third proposition. The cross made by him was in the form of the letter "X," with the intersection of the lines resting squarely upon the line forming the top of the rectangle containing the word "Yes." The trial court counted this as a vote for the third proposition. Appellee argues that since the intersection is on the line, it is within the square, as the line is part thereof. In our view the lines form and bound the square and to meet the requirements of the law the intersection of the cross must fall within the area formed and bounded by the lines. (*Grubb* v. *Turner*, 259 Ill. 436; *Sievers* v. *Hannah*, 296 id. 593; *Allen* v. *Fuller*, 332 id. 304.) The trial court erred in not rejecting this ballot.

Ballot exhibits No. 1 of the third ward and No. 6 of the fifth ward were cast in favor of the third proposition. The marks opposite the "Yes" on the third proposition are not crosses; the mark on the third-ward ballot is a reversed "Y," while on the other the mark is a "Y." In each mark one line does intersect with the other but does not project beyond. The two lines must not only intersect, but must cross. (*Brents* v. *Smith,* 250 Ill. 521.) The mark must be such that it can properly be called a cross. (*Bell* v. *Clawson,* 261 Ill. 148.) A mark in the shape of a "Y" is not sufficient. (*Atwater* v. *Eckard,* 282 Ill. 122; *Greene* v. *Bjorseth,* 350 id. 469.) The trial court erred in counting the two ballots for the third proposition.

Ballot exhibit No. 1 of the second precinct of the seventh ward was counted "Yes" for the third proposition by the trial court although the mark opposite the "Yes" was not a cross. It resembled a "V" or a large check mark. For the reasons given for not rejecting exhibits No. 1 of the third ward and No. 6 of the fifth ward, the court erred in not rejecting this ballot as to the third proposition.

Ballot exhibit No. 11 of the fifth ward was counted "Yes" for the third proposition by the trial court. The mark used by the voter is not a cross; it looks like a small letter "e" as written vertically in longhand. The mark is composed of a single line and we have said that a cross is formed by the "lines" used, intersecting and crossing. (*Brents* v. *Smith, supra; Allen* v. *Fuller, supra.*) The trial court erred in counting this vote.

Ballot exhibit No. 3 of the fourth ward, a vote "Yes" for the third proposition, was counted by the trial court. On the back of the ballot was a mark immediately below the initials of the election judge. Thomas Young, aged 81, was the judge whose initials appeared on the ballot. On the stand he testified about the questioned marks, saying: "Yes, I think it is mine," etc. Regardless of the testimony, it is reasonably clear that Young started to make the first

letter of his initials and did not finish, for the mark is very similar to the letter "T" as it appears in his initials on the ballot. The mark is an inadvertent one and without significance. The trial court did not err in counting this ballot.

In the third ward there were 669 names on the pollbook; 666 ballots were counted and there were four defective or spoiled ballots in a sealed envelope that were not counted. With these, the total votes cast were 670. Appellants contend the excess ballot should be treated as an illegal ballot because there is lack of evidence to show which way it was voted. The question is not raised for the first time in this court, as asserted by appellee, as the poll lists were in evidence by stipulation of the parties and record was made as to the number of ballots in each sack when opened in court. It was the duty of the trial court to determine the results of the election on the evidence before it. The judges of election in this ward did not follow the law and count all of the ballots to see if they agreed in number with the number of names on the poll list, before the ballots were inspected and tallied. (Ill. Rev. Stat. 1937, chap. 46, par. 57.) The excess ballot was not withdrawn according to law and cannot be attributed to any voter in that ward, or to either side of the third proposition. We cannot assume, as appellee would have us do, that a voter spoiled a ballot and cast another which became the extra ballot. Instead, we are confronted with 666 ballots, neither spoiled nor defective, cast by 665 electors. Under these circumstances the excess vote should have been deducted from the total vote cast on the third proposition on a *pro rata* basis. A total of 612 votes was cast in the ward on the third proposition, 389 votes "Yes" and 223 "No" votes. The excess vote should be deducted in the proportion of 389/612 to 223/612,—*i. e.,* .635 of a vote from the "Yes" vote and .365 of a vote from the "No" vote. *Neff* v. *George, supra; Talbott* v. *Thompson,* 350 Ill. 86; *McNabb* v. *Hamilton,* 349 id. 209; *Flowers* v. *Kellar,* 322 id. 265.

Tessie Yopp voted in the second ward when she lived in another ward. The trial court deducted her vote on a *pro rata* basis because the evidence did not indicate how she cast her ballot on the three propositions. Appellants say her vote should be deducted from the "Yes" total because she was city librarian, under duress and compulsion to vote with other city officials for the third proposition favored by the city administration. The allegations of duress and compulsion are not supported by evidence in the record and under the cases above cited, the trial court correctly prorated the excess vote in the second ward. The "Yes" and "No" votes in this ward were practically equal (255-253) and the prorated fractional votes therefore cancel each other and cause no change in the result.

In the fourth ward the trial court deducted one vote on the third proposition on a *pro rata* basis from the total vote cast because a watcher for appellants testified an elector had cast his ballot, although his name was not placed upon the poll list. The poll list and the number of ballots cast were in harmony. The question raised is whether the testimony of the watcher will override the poll list. The witness testified the unnamed voter had been seen by him in the ward and he was apparently a resident thereof. The watcher was not at the polling place the whole day and it is a fair assumption that some time during the day, while he was absent, the name of the voter was ascertained by one of the election officials and added to the list. No cases from this jurisdiction are cited, but *Lannon* v. *Ring,* 107 Minn. 453, 120 N. W. 1082, is persuasive. There, the number of valid ballots corresponded to the number of names on the poll list. On a contest, one additional ballot was found in the ballot-box. There was no evidence of fraud and it was held the poll list must prevail over testimony concerning the excess ballot and it could not be counted. Here, from the record, the poll list must prevail over the testimony of the sole witness, for his version does

not preclude the ascertainment of the name of the voter by the clerks of election and its addition to the list. In the absence of evidence showing fraud, a mere irregularity in time of entering the name of a voter on the poll list must not be allowed to disfranchise him. The court should not have deducted but should have added this vote on a *pro rata* basis, which means, in this ward, that .453 vote should be added to the "Yes" column and .546 vote should be added to the "No" column.

Anna Kasza, a resident of the seventh ward voted in the sixth ward. On the witness stand she testified that she had voted "Yes" on all three propositions. The trial court held that her demeanor on the stand had weakened her testimony to the point where it was not reliable and deducted her vote on a *pro rata* basis. Appellants contend her vote should have been deducted solely from the vote favoring the proposition in accordance with her undisputed and unimpeached testimony. The question depends solely upon whether the trial court was justified in his opinion of her veracity. The court did not abuse its discretion in allowing her to testify after both sides had rested (*People v. Lukoszus*, 242 Ill. 101) and it was within her right to testify how she voted. (*Stevenson v. Baker*, 347 Ill. 304.) Careful study of her testimony convinces us that the trial court was too harsh in judging her and erred in not deducting her entire vote from those who voted "Yes" on the third proposition. Since her "Yes" vote was not included in the stipulated total of 2019 "Yes" votes, and was clearly illegal because cast in the wrong ward, it cannot now be counted either for or against the third proposition.

Appellants and appellee had, by agreement, closed their proofs on Friday and argument had been set for the following Monday. On the latter day, appellants sought to introduce evidence upon matters which had not been presented before both sides rested. The case required two weeks of trial. From the record we cannot tell whether

appellants had knowledge of this evidence before they closed their proof or whether it was subsequently procured. After a party has closed his evidence, it is a matter of discretion whether the trial court will permit him to give further testimony, and the exercise of such discretion is not reviewable. (*Washington Ice Co.* v. *Bradley,* 171 Ill. 255; *Hartrich* v. *Hawes,* 202 id. 334; *People* v. *Lukoszus, supra.*) An election contest furnishes no cause for an exception to this established principle.

In view of the above findings as to the twenty disputed votes, it is unnecessary for us to consider other points raised by appellants, such, for instance, that the ballots had not been properly preserved. The stipulation made between the parties, referred to early in this opinion, was that 2019 "Yes" ballots had been cast for the third proposition, as against 2016 "No" ballots, giving a majority of three in favor of the third proposition. From our separate consideration of the twenty disputed votes, we have added a net total of 5.181 "No" votes. We have also added 1.453 to the "Yes" votes and deducted .635 "Yes" vote therefrom, leaving a net addition to the "Yes" column of .818 vote. The final result of these additions and subtractions, when added to the stipulated figures, is a total of 2021.181 "No" votes against the third proposition, and 2019.818 "Yes" votes in favor of it. This final tabulation shows that the third proposition, to authorize an indebtedness of not to exceed $925,000 to acquire or construct an electric light and power public utility in the city of LaSalle, failed by 1.363 votes of receiving a majority of all the legal votes cast on the question, and we so hold.

The judgment of the circuit court of LaSalle county, so far as it relates to the third proposition on the ballot, is reversed.

*Judgment reversed.*

Jones and Farthing, JJ., dissenting.