DENISE M. LIKENS, Plaintiff-Appellee, v. ROGER J. BAAS *et al.*, Defendants-Appellants.

First District (5th Division)   No. 84—0235

Opinion filed April 26, 1985.

Sheldon Gardner and George C. Pontikes, both of Foss, Schuman & Drake/Cohen & Bullard, of Chicago, for appellants.

James E. Gierach, of Gierach & Schussler, Ltd., of Chicago, for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

Defendants Anton Rous and Doroteja Rous lived in the 29th precinct of the 1st ward of Countryside. Their polling place for the April

12, 1983, municipal election was at the Ideal School on 58th Street, which was also the polling place for the 90th precinct of the 3d ward of Countryside.

On election day, the Rouses arrived at the 29th precinct, 1st ward, polling place, and produced their voter registration cards, which indicated they were to vote at that polling place. The election judges told them, however, that their names were not in the county clerk's binder for the 29th precinct, 1st ward. The election judges sent the Rouses across the hall to the 90th precinct, 3d ward, polling place. The Rouses' names were not found in the county clerk's binder for the 90th precinct, 3d ward, and they were sent back across the hall to the 29th precinct, 1st ward, polling place. The 29th precinct election judges again directed the Rouses to return to the 90th precinct, 3d ward, polling place and when they returned, their names were found in the 90th precinct, 3d ward, binder.

Although the Rouses resided in the 29th precinct of the 1st ward, their names appeared in the registration binder of the 90th precinct of the 3d ward because of the redrawing of ward boundaries in Countryside pursuant to a September 22, 1982, city ordinance.

Plaintiff Denise M. Likens and defendant Roger J. Baas were aldermanic candidates in the 1st ward Countryside municipal election. Baas ran as a candidate of the Independent Party of Countryside. Neither Baas nor Likens was a candidate on the 3d ward ballot. Willard L. Schuessler and Jeffrey R. Shepler were the aldermanic candidates in the 3d ward. Although the official ballots are not a part of the appeal record, the parties agreed during oral argument before this court that the names of the aforementioned aldermanic candidates appeared on the ballots in the precincts and wards in which they were candidates.

The Rouses did not attempt to change their polling place from the 3d ward, 90th precinct, to their correct 1st ward, 29th precinct, polling place. Instead, they cast their 3d ward, 90th precinct, ballots at that precinct polling place.

The official canvass of the election results revealed that Denise M. Likens was the 1st ward aldermanic winner over Roger J. Baas by the narrowest of margins, one vote, 404 to 403. Likens was declared elected to that office, and on April 27, 1983, she received her certificate of election, was administered the oath and undertook the duties of the office. Her aldermanic tenure was short-lived.

The day following the election, Carl W. LeGant, the successful Countryside mayoral candidate in the April 12 election, and Countryside alderman Joseph Fajdich visited the Rouses in their home. Mayor

LeGant and Alderman Fajdich, both members of the Independent Party of Countryside, pointed out to the Rouses that their failure to vote in the 1st ward aldermanic contest allowed Denise M. Likens to win and caused the Independent Party of Countryside candidate Roger J. Baas to lose the 1st ward aldermanic contest by one vote. Mayor LeGant and Alderman Fajdich requested the Rouses' assistance to rectify Baas' defeat.

On May 16, 1983, the Rouses and defeated 1st ward aldermanic candidate Roger J. Baas filed a petition for election contest with the Countryside city council. The petition in essence alleged the above-mentioned facts and circumstances of the Rouses' voting in the 90th precinct, 3d ward, instead of in the 29th precinct, 1st ward. The election contest petition further alleged that although the Rouses intended to cast a straight vote for the Independent Party of Countryside in precinct 29, ward 1, "which vote would have included a vote for the candidacy of Roger J. Baas," the Rouses "each cast a straight vote for the Independent Party of Countryside in Precinct 90, Ward 3." The petition pointed out that Roger J. Baas lost the 1st ward aldermanic election to Denise M. Likens by one vote. The petition did not allege fraud or an erroneous computation of the ballots cast, nor did the petition pray for a recount of the ballots. Instead, the petition prayed the Countryside city council to withdraw two votes that were cast for 3d ward aldermanic candidate Willard L. Schuessler, recast them for 1st ward aldermanic candidate Roger J. Baas, and declare Baas the winner of the 1st ward aldermanic race.

On May 19, 1983, Denise M. Likens, the previously declared and installed 1st ward aldermanic winner, filed with the Countryside city council a motion to dismiss the Rous and Baas petition for election contest. On May 23, Likens also filed a complaint for declaratory judgment in the circuit court of Cook County to enjoin the Countryside city council from hearing the election contest. Likens' request for a preliminary injunction was denied, and her complaint for declaratory judgment was dismissed. Likens then filed with the Countryside city council a supplemental motion to dismiss the petition for election contest, which along with the original motion to dismiss, asserted that the petition for election contest "was insufficient in law to confer jurisdiction on the city council to hear the subject matter." The city council denied Likens' dismissal motions on June 2, 1983.

On August 5, 1983, the Countryside city council conducted an evidentiary hearing on the Rous-Baas petition for election contest. The assistant director of elections for the Cook County clerk testified that his voter registration records for the Rouses in the 3d ward, 90th pre-

cinct, were erroneous and that the Rouses should have been registered in the 29th precinct of the 1st ward.

The Rouses testified at the hearing that they cast a straight Independent Party of Countryside ballot in the 90th precinct of the 3d ward in the April 12 municipal election but that they would have voted the straight Independent Party of Countryside ballot in the 1st ward had they voted there. Anton Rous testified that he knew he had voted in the wrong ward. Doroteja Rous testified that she voted as she wanted on election day.

According to Likens, as stated in her brief to this court:

"At the conclusion of the [Countryside city council] hearing, a typewritten decision stating that the City Council had heard the evidence was read by Alderman Schuessler, the IPOC [Independent Party of Countryside] aldermanic candidate elected in Ward 3. Alderman Blazina questioned whether the decision was prepared prior to the hearing since no recess occurred for the preparation of the decision and since Alderman Schuessler mistakenly started reading the decision before plaintiff presented any evidence. Alderman Blazina's questions were never answered and the city council refused to make the document a part of the record."

Likens predicated the foregoing on the following excerpt of the evidentiary hearing and proceedings before the Countryside city council on August 5, 1983:

"MR. PECK [attorney for the city of Countryside]: Any rebuttal.

MR. PONTIKES [attorney for the Rouses and defeated 1st Ward aldermanic candidate Baas]: ***. It is absolutely clear, it is not contradicted that the Rouses were going to go in to cast a straight party vote with the independent party of Countryside. They intended to do it in Precinct 29, Ward 1. They went to Precinct 90, Ward 3. All we're doing is asking that the vote be recorded where it should have been recorded. We all know it happened that way. It was a mistake in the office of the County Clerk. It should now be corrected. On that basis, we ask [that the] petition be granted.

MR. PECK: Thank you, gentlemen. At this point, I believe that my function has been completed. So, I will turn the rest of the hearing over to the Mayor and to the Council.

MAYOR LE GANT: This is a mayoral declaration to make a decision at this time. I will entertain the—

ALDERMAN SCHUESSLER: Mr. Mayor, Council heard the

evidence. \*\*\*. I move that Petitioners, Anton Rous, Doroteja Rous and Roger Baas has [*sic*] proven their allegations in [their] petition for election contest and that the two straight votes for the independent party of Countryside cast by Mr. and Mrs. Rous in Ward 3 be transferred to Ward 1 decreasing the total vote by Willard Schuessler of Ward 3 by two and increasing the total number of votes received by Roger Baas by Alderman of Ward 1 by two and that Roger Baas be declared to have been elected as Alderman of Ward 1 at April 12, 1983, City of Countryside election.

MAYOR LE GANT: Is there a second to the motion?

[ALDERMAN] FAJDICH: Second the motion.

MAYOR LE GANT: Any discussion?

ALDERMAN BLAZINA: *Yes, I would like to question a member of the Council about a prepared statement saying this Council has discussed or heard any of—*

[ALDERMAN] SCHUESSLER: *I prepared it right here.*

ALDERMAN BLAZINA: *I'm asking how you possibly could have prepared a statement already made up when we haven't heard the testimony and decide from the last three hours and you haven't been out of this room approximately—*

[ALDERMAN] SCHUESSLER: *I prepared it right here.*

MR. GIERACH [attorney for Denise M. Likens]: *It's typewritten and I would ask that it be introduced into evidence* and erroneously read into the record because I looked over his shoulder when he made the motion for—

[ALDERMAN] SCHUESSLER: Are we looking at this—

MR. GIERACH: No, I was looking at the typed copy that was read. Do you have the typed copy that you just read from—

ALDERMAN CONRAD: Mr. Mayor, I call for the—

MAYOR LE GANT: Call for the roll. No more discussion.

\* \* \*

MR. GIERACH: *Mr. Schuessler, He still has that in his hand, the typewritten statement which he started to read after a motion. I ask that it be made part of the record.*

MAYOR LE GANT: We have listened to all of the testimony here and the motion is carried at this point. I show no further cause to continue the meeting.

MR. GIERACH: May that be made—." (Emphasis added.)

The alacrity with which the council members ruled on the election contest petition and evidence is extremely revealing. The typewritten,

prepared statement was not made a part of the record of the city council proceedings, nor was it made a part of the record on this appeal.

At the conclusion of the hearing, the Countryside city council withdrew two votes from the 3d ward Independent Party of Countryside winning candidate, Willard L. Schuessler, recast those two votes for the 1st ward Independent Party of Countryside losing candidate, Roger J. Baas, and declared Baas to be the winner of the 1st ward. Baas was administered the oath of office as alderman and council member. Schuessler's victorious aldermanic election was not affected by the two votes deducted from his total winning number.

Four days later, on August 9, 1983, Likens filed in the circuit court of Cook County a petition for writ of *mandamus* and a common law writ of *certiorari* and applied for a temporary restraining order or preliminary injunction. The court refused to grant the temporary restraining order and preliminary injunction. Defendants' motion to dismiss Likens' complaint was also denied. On December 23, 1983, the trial court ruled:

> "[T]he decision of the City Council to recast the Rouses' ballots is fraught with dangers that could lead to fraud and the undermining of the integrity of the electoral process.
>
> * * *
>
> The Countryside City Council disregarded its duty to ensure that the minimum requirements to contest an election were met; as a result, the City Council failed to fulfill its duty to dismiss the contest petition below. Because of that failure, the City Council disregarded another duty: it failed to count only those votes cast for the office of First Ward Alderman in the contest. The City Council does not have the power to recast votes at the behest of a person contesting an election. The City Council does not elect its own members—that is done by the citizens of Countryside at the poll for the Alderman for Ward One. The votes of the Rouses were not cast for Roger Baas; and, therefore, could not be counted for him."

Thereupon, the trial judge granted Likens' petition for writs of *mandamus* and *certiorari*, ordered the Countryside city council to dismiss the petition for election contest, quashed the election contest proceedings before the Countryside city council and reinstated Likens as alderman of the 1st ward. We concur with the trial court's judgment.

Section 3—11—10 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 3—11—10) provides, "The City Council shall be the

sole judge of the election to office of the alderman. ***. However, a court shall not be prohibited from hearing and determining a proceeding in quo warranto." Based on this statute, defendants urge that "exclusive jurisdiction [is conferred] upon the city council over the election contests concerning alderman" and that "the city council, as a legislative body, has a wider jurisdiction than that defined by the election code." These contentions, however, ignore the holding of the court in *People ex rel. Crnkovich v. Kroll* (1954), 4 Ill. App. 2d 435, 441, 124 N.E.2d 633. Crnkovich was elected on April 21, 1953, and declared a trustee of the village of McCook on April 27, 1953. The statute provided that any petition to contest such election must be filed with the village clerk within 30 days after the official has been declared elected. On June 24, 1953, more than 30 days after Crnkovich was declared elected, Joseph Uljanich filed a petition contesting Crnkovich's election. The petition alleged that Uljanich was Crnkovich's opponent in the election for village trustee; that the canvass showed that Crnkovich received 125 votes and Uljanich received 124; that four votes, which were invalid because they were not initialed by the election judge as required by statute, had been illegally counted for Crnkovich; and that if such ballots had not been so counted, Uljanich would have been the lawfully elected village trustee, rather than Crnkovich. Crnkovich objected to the election contest petition on the ground that the village trustees lacked jurisdiction because the petition was not filed within 30 days after Crnkovich had been declared trustee, as the election contest statute required. The village trustees passed a resolution to entertain the election contest, having taken the position that they were "the sole judge of the election and qualification of its own members, with exclusive jurisdiction to hear and decide the election contest, and that courts are without jurisdiction *** in contests of this kind." 4 Ill. App. 2d 435, 440-41.

Crnkovich then filed a petition for a writ of *mandamus* to prevent the village trustees from entertaining the petition to contest his election. The trial court dismissed the petition for a writ of *mandamus*. On appeal, the court reversed and held that the village trustees were without jurisdiction to entertain the election contest proceedings because the contest petition was not filed within 30 days after Crnkovich had been declared trustee, as required by statute. The court stated:

> "Part of the basis for the jurisdiction of a village board of trustees over contests of the election of members of that board is the statute making the board the judge of the election of its members. Its power to act in that respect exists because the

statute making it the judge of the election of its members has been construed to designate it as the body to hear an election contest; *but such right is not an unfettered right to act without regard to procedures established to regulate election contests."* (Emphasis added.) *People ex rel. Crnkovich v. Kroll* (1954), 4 Ill. App. 2d 435, 441.

■■ Defendants' contentions in the case at bar that the city council has exclusive jurisdiction over an aldermanic election contest and that it has broader jurisdiction than that conferred by the Election Code, are repugnant to, in opposition of and in contradiction with section 3—2—2 of the Illinois Municipal Code. (Ill. Rev. Stat. 1981, ch. 24, par. 3—2—2.) That section provides, "The schedule, manner of conducting, voting at, and contesting municipal elections shall be as provided in the general election law." Section 23—19 of the Election Code, which sets forth an elector's right to an election, states, "The election of any person declared elected to any office other than Governor *** may be contested by an elector of the *** town or precinct in and for which the person is declared elected." Ill. Rev. Stat. 1981, ch. 46, par. 23—19.

In addition, a petition to contest an election is required to contain certain essential allegations. The vital allegations of the petition are specified in section 23—20 of the Election Code, which states:

"The person desiring to contest such election shall *** file with the clerk of the proper court a petition, in writing, setting forth the points on which he will contest the election ***. *The petition shall allege* that the petitioner voted at election, and *that he believes that a mistake or fraud has been committed in specified precincts in the counting or return of the votes for the office *** or that there was some other specified irregularity in the conduct of the election in such precincts, and the prayer of the petition shall specify the precincts in which the recount is desired."* (Emphasis added.), Ill. Rev. Stat. 1981, ch. 46, par. 23—20.

In *Wood v. Hartman* (1942), 381 Ill. 474, 480-81, 45 N.E.2d 864, the Illinois Supreme Court stated:

"The right to contest the election of an individual to office is not a common law right, but exists only by statute ***.

\* \* \*

*\*\*\* In election contests \*\*\* the ballots are before the court to be counted, and the sole question to arise and to be considered is as to whether or not the ballots are legal or illegal.*" (Emphasis added.)

■ When the foregoing legal principles are applied to the Rous-Baas petition for election contest, it is patently clear that the petition failed to allege facts adequate to confer jurisdiction on the Countryside city council to entertain the petition. The pertinent allegations of the Rous-Baas petition were:

"Petitioners Anton Rous, Doroteja Rous and Roger J. Baas *** contest the final results of the April 12, 1983 Countryside Municipal election *** whereby respondent Denise Likens was declared to be the winner in the aldermanic race of Ward 1.

* * *

[T]he petitioners voted at the April 12, 1983 Countryside Municipal Election and *** Petitioners believe that a mistake has been committed in the counting and return of the votes for the office of Ward 1, specifically with regard to the votes in Precinct 29, Ward 1 and Precinct 90, Ward 3.

Petitioner Roger J. Baas was a candidate of the Independent Party of Countryside for the office of alderman in Ward 1 at the election of April 12, 1983.

The petitioners, Anton Rous and Doroteja Rous are voters residing in Precinct 29, Ward 1 in the City of Countryside.

When Petitioners Anton Rous and Doroteja Rous arrived at the polling place on April 12, 1983, they were informed by the election judges that they were not registered to vote in Precinct 29, Ward 1, but rather were registered in Precinct 90, Ward 3, despite the fact that the voter's cards of said Petitioners showed that they were registered voters of Precinct 29, Ward 1. The binder or registration form from the County Clerk's office had them listed by mistake as registered in Precinct 90, Ward 3, instead of Precinct 29, Ward 1. Petitioners Anton Rous and Doroteja Rous protested and requested that they be allowed to vote in Precinct 29, Ward 1. They were told by the election judges that they were required to vote in Precinct 90, Ward 3. They were not told they could vote in Precinct 29 Ward 1 by affidavit.

It was the intent of each of the Petitioners Anton Rous and Doroteja Rous to cast a straight vote for the Independent Party of Countryside in Precinct 29, Ward 1, which vote would have included a vote for the candidacy of Petitioner Roger J. Baas.

Petitioners Anton Rous and Doroteja Rous each cast a straight vote for the Independent Party of Countryside in Precinct 90, Ward 3, on April 12, 1983."

The petition then alleged that Denise M. Likens received 404 votes and that Roger J. Baas received 403 votes for the alderman of the 1st ward and that the canvassing board declared Likens to be the winner. The petition alleged that had the Rouses voted in the 29th precinct of the 1st ward, they would have voted for Roger J. Baas and that his total votes would have been 405, thereby defeating Likens by one vote. The petition further alleged that the transfer of the Rouses' two votes from the 90th precinct, 3d ward, and the recasting of those two votes for 1st ward aldermanic candidate Baas would not affect the aldermanic contest in ward 3 or the contest for mayor, clerk or treasurer. The prayer for relief of the petition is hereafter discussed.

The allegations of the election contest petition reveal that there was no "mistake or fraud *** committed in specified precincts in the counting or return of the votes" in the 1st or 3d ward aldermanic election. Rather, the petition alleged that the Rouses voted the straight Independent Party of Countryside ballot in precinct 90 of ward 3 but that they *intended* to vote for 1st ward aldermanic candidate Roger J. Baas. The Rouses' belatedly expressed intent to vote for Baas is superficial, to say the least, inasmuch as Baas' name did not appear on the 3d ward aldermanic ballot. Pursuant to our supreme court's decision in *Boland v. City of La Salle* (1938), 370 Ill. 387, 398, 19 N.E.2d 177, the Countryside city council was only empowered to deduct the Rouses' two votes from 3d ward aldermanic candidate Schuessler. In *Boland*, Anna Kasza voted in the 6th ward, although she resided in the 7th ward. At the evidentiary hearing of the election contest Kasza testified that she voted yes on the three propositions on the ballot as to whether the city should acquire and operate a municipal light and power plant. The supreme court held that the trial judge should have deducted Kasza's votes from the yes votes on the three propositions since her votes were *"clearly illegal because cast in the wrong ward, [and they] cannot now be counted either for or against the [three] propositions."* (Emphasis added.) 370 Ill. 387, 398, 19 N.E.2d 177.

In *Thornton v. Gardner* (1964), 30 Ill. 2d 234, 195 N.E.2d 723, the proposition on the ballot was whether a school district should be created. It was established in a proceeding to contest the election results that seven persons voted at the wrong polling place. The court held that the seven votes were illegal and since there was no evidence on how the seven voted, the trial judge correctly deducted the votes on a pro rata basis in accordance with the apportionment rule.

In the pending case, defendants' allegation that the Rouses

*intended* to vote for 1st ward Independent Party of Countryside aldermanic candidate Roger J. Baas when they cast a straight Independent Party of Countryside ballot in the 3d ward is fallacious. Baas was not a candidate on the 3d ward aldermanic ballot. The only two names on the 3d ward aldermanic ballot were Jerry R. Shepler and Willard J. Schuessler. Nevertheless, at the evidentiary hearing of the election contest before the Countryside city council, the Rouses testified that they saw Baas' name on the 3d ward ballot, and over objection, they were permitted to testify that they *intended* to vote the 1st ward straight Independent Party of Countryside ballot, which would have included a vote for Baas.

*McCreery v. Burnsmier* (1920), 293 Ill. 43, 49, 127 N.E. 171, involved a Mason City mayoral election in which McCreery was defeated as a write-in candidate. McCreery also lost the election contest in the trial court. The supreme court stated:

> "Where the ballots are actually and definitely marked for some person eligible to the office *** *the intention of the vote must be determined by the ballot as cast and not by extraneous evidence of the voter as to what his intentions were when he cast his vote.* In other words, if a voter plainly marks his ballot for John Jones *** and John Jones is eligible to such office *** the voter cannot be heard to say in such case that he intended to vote for James Jones. *The rule is that if the ballot is found to be perfect and expresses a certain intent by the elector it must be accepted as the exclusive evidence of its intent.*" (Emphasis added.)

Thus, in an election contest hearing, "the intention of the voter must be determined by the ballot as cast and not by extraneous evidence of the voter as to what his intentions were when he cast his vote. The rule is that if a ballot is found to be perfect and expresses a certain intent by the elector it must be accepted as the exclusive evidence of his intent." *A fortiori*, an allegation in an election contest petition of what the voters *intended* when they cast their ballots, which intent is contrary to the ballots that were actually cast by the voters, is irrelevant, impermissible and insufficient evidence upon which to conduct an election hearing.

In *Metheny v. Pickel* (1923), 310 Ill. 309, 318, 141 N.E. 762, the petition to contest the election alleged fraud. The election return awarded Metheny 84 votes. Yet, at the election contest hearing, 118 voters were allowed to testify for whom they voted (Metheny), not for whom they intended to vote. The supreme court warned:

> "Great precaution should be used in admitting parol testimony

of witnesses indicating that they voted differently from what the ballots, properly preserved, would tend to show. Particularly would this be true where there was only a difference of one or two votes, where some voter might be induced to testify falsely for a consideration. In such case it might be dangerous to allow the testimony of one or two voters to overcome the showing made by the ballots cast ***."

In the pending case, Denise M. Likens won the 1st ward aldermanic contest by one vote. Though Rous testified at the Countryside city council election contest hearing that he never discussed voting matters with anyone, Mayor LeGant and Alderman Fajdich came to his home the day after the election and Rous participated in such a discussion. Rous testified that at this meeting, LeGant and Fajdich "explained to me what happened, what mine and my wife's vote really, actually meant."

The Election Code recognizes the possibility of errors in the registration of voters and provides procedures to contest such errors. Several alternatives were thus available to the Rouses. Pursuant to sections 4—15 and 4—16 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, pars. 4—15, 4—16), they could have voted in their correct polling place and for the appropriate 1st ward aldermanic candidate by certificate from the county clerk, or they could have voted as unregistered voters by affidavit under the provisions of section 17—9 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 17—9). Their third choice was to vote in the 90th precinct of the 3d ward, which they chose to do. By their petition to contest the election, they sought a fourth alternative, i.e., to have the Countryside city council recast their votes for the losing 1st ward aldermanic candidate after the election results had been tabulated. This alternative was not legally available. The Countryside city council lacked jurisdiction to grant the relief the Rouses and defeated 1st ward aldermanic candidate Baas sought in their petition to contest the election.

■ Next, the petition prayed that the council grant defendants the following relief:

"1. Enter an Order finding that the two ballots of Petitioners Anton Rous and Doroteja Rous were erroneously cast in Precinct 90, Ward 3 on April 12, 1983.

2. Enter an Order finding that the two ballots of Petitioners Anton Rous and Doroteja Rous should have been cast in Precinct 29, Ward 1 on April 12, 1983.

3. Enter an Order finding that the two ballots of Petitioners Anton Rous and Doroteja Rous ought to be included in the vote

totals of Petitioner Roger J. Baas.

4. Enter an Order declaring that Petitioner Roger J. Baas is the duly elected alderman in Ward 1 of the City of Countryside and should be installed in the office of Alderman of Ward 1.

5. Enter an Order declaring that Respondent Denise M. Likens was not elected as alderman in Ward 1 of the City of Countryside and is not, therefore, qualified to be installed in the office of alderman of Ward 1.

6. Enter an Order directing the Clerk of the City of Countryside to administer the oath of office to Petitioner Roger J. Baas for the office of alderman of Ward 1 of the City of Countryside."

Section 23—20 of the Election Code requires that the prayer of the petition for election contest *"shall specify the precincts in which the recount is desired."* (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 46, par. 23—30.) The instant petition failed to fulfill this requirement and was therefore fatally defective. It did not seek a recount of the ballots in any precinct. The petition did not request preservation of the ballots and at the evidentiary hearing, no ballots were produced or counted. In *Wood v. Hartman* (1942), 381 Ill. 474, 481, 45 N.E.2d 864, the contest was over the election for Madison County treasurer. The trial judge counted ballots which had not been initialed by the election judge, as required by statute. The supreme court held that such ballots were illegal. The court held further that after preliminary proof of the proper preservation of the ballots has been presented, *"the ballots are before the court to be counted, and the sole question to arise and to be considered is as to whether or not the ballots are legal or illegal."* (Emphasis added.) 381 Ill. 474, 481, 45 N.E.2d 864.

█ Section 23—23 provides for the hearing of the election contest. (Ill. Rev. Stat. 1981, ch. 46, par. 23—23.) Throughout said provision there are references to counting and recounting the ballots "to determine the true and correct result of the election." In an election contest, the ballots may be counted, recounted and retabulated, and illegal ballots may be rejected and deducted. (*Scribner v. Sachs* (1960), 18 Ill. 2d 400, 164 N.E.2d 481; *Lehman v. Hill* (1953), 414 Ill. 173, 111 N.E.2d 120; *Smoda v. Gallagher* (1952), 412 Ill. 271, 106 N.E.2d 181; *Boland v. City of La Salle* (1938), 370 Ill. 387, 19 N.E.2d 177; *Stevenson v. Baker* (1932), 347 Ill. 304, 179 N.E. 842; *Leach v. Johnson* (1974), 20 Ill. App. 3d 713, 313 N.E.2d 636; *Drolet v. Stentz* (1967), 83 Ill. App. 2d 202, 227 N.E.2d 114.) But there is no authority in an election to transfer an illegal vote from a victorious candidate in one ward and recast it for a losing candidate in another ward to give

the losing candidate a margin of victory. We conclude that the Countryside city council lacked jurisdiction to grant the relief prayed in the petition.

■ We next turn to the defendants' concern for the procedures available to and relied on by Likens for relief and redress, *i.e.*, writ of *mandamus*, writ of *certiorari* or *quo warranto*. Defendants contend that *mandamus* and *certiorari* were unavailable to Likens and that *quo warranto* was the only procedure available to her. We disagree.

Defendants attach unwarranted significance to aesthetic and cosmetic pleading labels. Count I of Likens' complaint was for a writ of *mandamus*. She alleged that the Countryside city council lacked jurisdiction in an election contest to grant the relief prayed for, *i.e.*, to recast and transfer the Rouses' votes to Baas, the losing candidate. Likens further asserted that defendants' petition to contest the election did not allege facts and circumstances which conferred jurisdiction on the council to entertain an election contest.

Likens was correct in these assertions. The Countryside city council did lack jurisdiction to grant the relief requested. It was powerless to transfer and recast votes to the losing candidate, Baas. The jurisdiction of the council, under the Election Code, was confined to recounting the votes. It was absolutely impotent to recast a single vote. The council was under a clear legal duty to dismiss the petition without a hearing. It failed to do so. It exceeded its jurisdiction. *People ex rel. Bradley v. McAuliffe* (1962), 24 Ill. 2d 75, 179 N.E.2d 616, *People ex rel. Iddings v. Dreher* (1922), 302 Ill. 50, 134 N.E. 22, and *People ex rel. Crnkovich v. Kroll* (1954), 4 Ill. App. 2d 435, 124 N.E.2d 633, hold that *mandamus* is the appropriate procedure to restore an illegally removed office holder to office and is also the correct procedure to challenge municipal officers who have exceeded their jurisdiction.

In *People ex rel. Crnkovich v. Kroll* (1954), 4 Ill. App. 2d 435, 124 N.E.2d 633, the court stated that the initial question presented was whether the village trustees "had jurisdiction to entertain the petition by Uljanich to contest [Crnkovich's] election, which was admittedly filed more than thirty days after [Crnkovich] had been declared elected." (4 Ill. App. 2d 435, 440, 124 N.E.2d 633.) The court held that the trustees lacked such jurisdiction. The court then concluded that "the remaining contention to be considered is whether [Crnkovich] properly invoked the remedy of mandamus." The court resolved the question in the following manner:

> "The question presented by the petition was whether respondents [the village trustees] were without jurisdiction to entertain the petition. We have reached the conclusion that it was their

clear legal duty to refuse to receive it and entertain it, and that they arbitrarily disregarded that duty. Under the circumstances it must be held that the relator [Crnkovich] showed a clear and undoubted legal right to the relief prayed, and a corresponding duty on the part of respondents to do the acts sought to be compelled. In Linegar v. Rittenhouse, which established the exclusive right of the city council to hear contests of the election of its own members, the court noted that 'the power conferred on the city council to judge of the election and qualification of its own members, however, may not be a bar to a quo warranto or mandamus proceeding.' *** However, the court added that mandamus is 'a proper remedy to restore a party to the possession of an office from which he has been illegally removed,' and concluded: 'So it has been held that mandamus will issue in a proper case to compel a city council to desist and refrain from interfering with a public officer, such as mayor, in the discharge of his duties.' " 4 Ill. App. 2d 435, 444.

*Mandamus* was thus the proper remedy to restore Likens to the office of alderman of the 1st ward from which she had been illegally, arbitrarily and capriciously removed. *People ex rel. Iddings v. Dreher* (1922), 302 Ill. 50, 134 N.E. 22.

Section 14—108 of the Illinois Code of Civil Procedure provides that "the proceedings for mandamus shall not be dismissed nor the relief denied because the plaintiff may have another judicial remedy, even where such other remedy will afford proper and sufficient relief, and amendment may be allowed as in other civil cases." Ill. Rev. Stat. 1981, ch. 110, par. 14—108.

Count II of Likens' complaint sought a writ of *certiorari* to challenge the jurisdiction of the city council to recast two votes for an aldermanic candidate and to test the legality of the proceedings before the council. Count II further alleged that there was no statutory review from the decision of the Countryside city council which ousted Likens from the council. Count II also asserted that the council acted illegally, arbitrarily and capriciously in removing Likens from office. Likens' reliance on *Goodfriend v. Board of Appeals* (1973), 18 Ill. App. 3d 412, 418, 305 N.E.2d 404, was well founded. In that case, the court held:

> "It is the law in this State that circuit courts have the power to issue common law writs of certiorari addressed to all inferior tribunals whenever it is shown either that they have exceeded their jurisdiction or have proceeded illegally, and no direct appeal or other mode of direct review of their proceedings is pro-

vided."

■ Likens persuasively argues that any right that she may have had to proceed by *quo warranto* did not preclude her from proceeding by *mandamus* and *certiorari*. She further convincingly argues that in a *quo warranto* proceeding, the only proper relief would have been Baas' ouster from the contested office and that *quo warranto* could not have restored her to that office. Likens also aptly cites *People ex rel. Chillicothe Township v. Board of Review* (1960), 19 Ill. 2d 424, 427, 167 N.E.2d 553, which states:

> "The function of a writ of *quo warranto* is to question the right of the respondent who is charged with usurping, intruding into or unlawfully holding or executing any office. [Citation.] The writ may be employed to try the validity of the organization and title of the officers of public bodies, *but it is not a proper proceeding to test the legality of the official acts of public officers.*" (Emphasis added.)

A successful challenge to Baas' election to the aldermanic office by the city council would not have restored Likens to that office. Likens and the electors of the 1st ward of Countryside were entitled to have Likens represent them as alderman. She was wrongfully and illegally dispossessed of that office by the Countryside city council. Accordingly, we affirm the trial court's order to the Countryside city council to dismiss the Rous-Baas petition to contest the election. We further affirm the trial court's order quashing the Countryside city council election contest proceedings and the trial court's order restoring Denise M. Likens as alderman of the 1st ward of Countryside.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.